COMMONWEALTH vs. DIGNO R. RIVEIRO.

Worcester. September 11, 1984. — November 6, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Practice, Criminal,* Voir dire.

At a murder trial, the judge's denial of defense counsel's requests that the jury be excused during a voir dire as to the admissibility of a custodial statement by the defendant was prejudicial error where the jury, during portions of the voir dire at which they were present, were repeatedly exposed to the existence of a particular statement by the defendant, which was excluded at the conclusion of the voir dire on the ground that the defendant had not received adequate Miranda warnings. [228-230]

INDICTMENTS found and returned in the Superior Court Department on November 3, 1982.

The cases were tried before *Thomas R. Morse, Jr.,* J.

*Maureen B. Brodoff* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Digno R. Riveiro, appeals from convictions entered March 28, 1983, on two indictments charging murder in the first degree. The issues on appeal concern alleged errors in the trial judge's refusal to conduct a voir dire examination in the absence of the jury on the admissibility of the defendant's statement to a police officer and in the judge's jury instructions. For the reasons set forth below, we conclude that the judge committed reversible error in connection with the voir dire examination and we order a new trial. Accordingly, we do not reach issues connected with the jury charge.

The events leading to defendant's indictments are summarized as follows. On the evening of July 22, 1982, the defendant, Santos Figueroa, Elisio Maisonave, and several others

were engaged in a dice game at the rear of 277 Tacoma Street
in Worcester's Great Brook Valley Housing Project. The game
ended in the fatal shooting of Figueroa and Maisonave. The
Commonwealth contended that the defendant left the game
and returned to shoot the two victims with deliberate premedi-
tation.

According to the Commonwealth's case, the defendant lost
money while playing dice, borrowed more money, and lost
that as well. He then left the area of the game. One witness,
Edwin Toro,[1] testified that a man was present in the area of
the game. This man had said that he was going to sell a gun.
Toro testified that this man left at the same time as the defend-
ant.

Sometime later, the defendant returned. Maisonave muttered
a contemptuous expletive at the defendant. Several witnesses
then observed the defendant with a gun. He shot twice, hitting
Maisonave and Figueroa. The game's participants scattered.
The defendant, with the gun still in his hand, grabbed Toro
and forced him to drive away from the area in Toro's pickup
truck. The defendant was later arrested in the company of a
female friend in her car after he had left Toro at a Worcester bar.

The defendant's case consisted of his testimony describing
the shooting. This description differed slightly from the Com-
monwealth's and raised an issue of self-defense. The defendant
testified that he played dice with Figueroa and Maisonave on
July 22, 1982. At some point in the game, the defendant
noticed that Figueroa was using two sets of dice. The defendant
grabbed Figueroa's hand and accused him of cheating.
Maisonave then pushed Riveiro to the ground, called him a
vile name in Spanish and threatened to kill him.

From the ground where he fell, the defendant observed
Maisonave pull a gun.[2] In a supine position, the defendant
drew his gun and, in fear of his life, fired twice. Everyone

---

[1] Toro testified to two versions of the incident. His initial testimony was
inconsistent with pretrial statements and was favorable to the defendant.
Toro modified his testimony after the judge had him consult with an attorney
regarding perjury.

[2] Neither this gun nor the defendant's gun was recovered.

scattered and the defendant crawled behind a boat that was nearby. After hearing two more shots, the defendant ran over to where he saw Edwin Toro and ordered Toro to get him out of there. They drove to a local bar where the defendant had a drink to steady his nerves. Shortly thereafter, the defendant walked from the bar and met his female friend and drove away in her car. The defendant was later arrested in this car.

The defendant testified that he was carrying a gun because of his jewelry business. He sold jewelry on the street and carried the gun when he was collecting money from jewelry sales. He testified that he had been collecting money earlier that day in the Great Brook Valley area. He disposed of the gun on route to the bar with Toro.

We come now to the dispositive issue in the case. Following his arrest, the defendant was interrogated at police headquarters by police detectives. The questions were translated into Spanish by Officer Angel Rosario. The defendant allegedly denied knowing Toro when confronted with him at the police station. The prosecutor was anxious to introduce this evidence because he considered it an admission which damaged the defendant's credibility.

As the assistant district attorney approached Officer Rosario's testimony concerning the defendant's admission, he inquired at sidebar whether a voir dire examination without the jury was appropriate to determine whether the defendant had voluntarily waived his rights. Defense counsel asked for a voir dire without the jury. The judge decided to proceed in the jury's presence and to make findings on admissibility.

With the jury present, Rosario twice failed to recite properly the Miranda warnings when asked to repeat the warnings which he gave to the defendant. The prosecutor persisted in his attempt to introduce the defendant's statement. The judge sustained the defendant's objections to any testimony about the defendant's statement. After repeated attempts to determine whether Rosário had given all the Miranda warnings and to introduce the statement, the judge called a bench conference. Defense counsel argued that the issue as to whether proper Miranda warnings were given should be determined out of the jury's

presence. He objected to the continuation of the proceedings before the jury and moved for a mistrial. The judge decided to allow the Commonwealth to continue before the jury on another track.

The Commonwealth then attempted to show that Rosario had either read the Miranda warnings from a card or translated them directly as one of the detectives recited them in English. The judge allowed the Commonwealth a series of leading questions over the defendant's objection. Rosario was still unable to provide testimony which would properly lay a foundation for the defendant's statement. The Commonwealth requested a voir dire examination of a detective to determine whether Rosario had translated the Miranda warnings as given by the detective.

At a bench conference, defense counsel reiterated his objection to the proceeding in the jury's presence. He also made note of his objections to the Commonwealth's series of leading questions. The defendant again moved for a mistrial on the ground that the proceedings should not have occurred before the jury. The judge denied this motion but excused the jury. In the absence of the jury, defense counsel cross-examined Rosario. Rosario then admitted that he did not translate the Miranda warnings.

Defense counsel again moved for a mistrial. He argued that the interrogation of Rosario before the jury would give them an impression that the defendant had made a statement. Defense counsel asserted that the jury would speculate as to what the defendant had said. The judge denied the motion and called back the jury. After Rosario finished testifying, the judge instructed the jury that "[t]he witness did not give full and complete Miranda warnings on his own testimony so I excluded any, as I had to, what the defendant may have said. That leaves you in a position of not knowing what he said. You must not speculate what he said, whether it was exculpatory or otherwise, because it is not in evidence. Just disregard it in its entirety." The defendant objected to this instruction because the jury could infer that something inculpatory was said and that it was excluded because of a technicality.

The threshold questions whether Miranda warnings were given and if they were given, whether the defendant waived his rights, are for the judge and not for the jury. *Commonwealth v. Robinson,* 7 Mass. App. Ct. 600, 604 (1979). The testimony of Rosario could lead the jury to believe that the defendant had made an inculpatory statement which was being kept secret from them. The judge unwittingly added cogency to this inference. It would ask too much of jurors to disregard such testimony and not to speculate. Such an admonition calls to mind the description of a limiting instruction given by Judge Learned Hand in *Nash* v. *United States,* 54 F.2d 1006, 1007 (2d Cir.), cert. denied, 285 U.S. 556 (1932), where he calls it a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else."

The Commonwealth argues that the defendant is precluded from asserting as error the failure to hold a voir dire out of the jury's presence. This argument is based on the defendant's failure to file a motion to suppress the admission and his alleged failure seasonably to request a pretrial hearing. The principal factual assertions on which this argument is grounded are not supported by the record.

In deciding the procedure to follow, the judge asked defense counsel if a motion to suppress had been filed. Defense counsel then noted that the defendant's custodial statement was not in Rosario's report which the defendant had received only five to seven days prior to the trial. The Commonwealth argues that this does not excuse the defendant's failure to file a motion to suppress. In support, it submitted a letter dated March 17, 1983, addressed to defense counsel. The letter purported to place in writing oral references to this testimony discussed during a telephone conversation on March 16, 1983. We have examined the letter and find it questionable whether this letter was sufficient to notify the defendant of the potential issue. Even if it had, the defendant did not receive sufficient notice to file seasonably a motion to suppress. See Mass. R. Crim. P. 13 (a) (3), 378 Mass. 871 (1979).

The defendant did not waive an objection to the procedure. He stated a specific preference for a voir dire without the jury

present. After the judge outlined the procedure he would follow, he noted the defendant's objection. Defense counsel then stated, "All right."[3] He restated his objection when the Commonwealth, failing to lay a proper foundation,[4] still attempted to introduce the statement. Defense counsel's actions clearly indicated his objection to the procedure.

The Commonwealth asserts that the defendant was not prejudiced by the failure to hold a voir dire because the statement was excluded and the judge instructed the jury not to speculate as to any statement. The cases cited by the Commonwealth in support of this proposition differ in an important respect from the present case. In those cases, the failure to hold a voir dire

---

[3] The transcript of the bench conference reads as follows:

THE PROSECUTOR: "Your Honor, we're approaching an area where there is a statement made by the defendant. Where he went in and gave the defendant his rights and the defendant made this statement after being advised of his rights. Then Toro was brought into the defendant and he denied knowing Toro. The question is whether or not it is an appropriate time to have a voir dire as to whether he, I know of interest to [defense counsel], whether or not he voluntarily waived his rights."

THE JUDGE: "Was there ever a motion to suppress?"

THE PROSECUTOR: "No there wasn't, Your Honor."

DEFENSE COUNSEL: "First of all, a number of the police reports came may be five to seven days before trial. None of the testimony that's about to come out is in this six page police report."

THE JUDGE: "I think we'll go at it with the jury here, I'll make rulings independently as to whether to allow the statement. The jury is going to make their own judgment whether or not it's voluntary, might just hear the prelude to the statement, if it comes at all."

DEFENSE COUNSEL: "I'd rather we had a separate voir dire and you make independent findings."

THE JUDGE: "I can make my findings if I want the jury to hear it."

DEFENSE COUNSEL: "Suppose you find they shouldn't hear it?"

THE JUDGE: "Before we ask the question, what did he say. Find out what was said to him. Then make a statement and if the answer to that question is yes, the next question is what did he say. Your objection to making my rulings on voluntariness."

DEFENSE COUNSEL: "All right."

[4] Each time Officer Rosario testified as to the Miranda warnings given, he failed to state that an attorney would be provided to the defendant if he could not afford one. His testimony failed to show that the prerequisites of Miranda were fully met. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Commonwealth v. Tavares, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982).

was not prejudicial because the statements were found admissible. See, e.g., *Commonwealth* v. *Paszko,* 391 Mass. 164, 173 (1984). Here, the statement was ruled inadmissible.

In the present case, the jury were repeatedly exposed to the existence of a custodial statement. Defense counsel found it necessary to object several times to the introduction of that statement. Eventually the jury were excused, only to return and find that they would not hear the statement. The jury were left to speculate how damaging the statement was to the defendant. Common sense requires us to recognize that the jury would assume that a statement, successfully excluded by defense tactics, was damaging.

We conclude that failure to hold the voir dire on the admissibility of the defendant's statement out of the jury's hearing was prejudicial error.

*Judgments reversed.*

*Verdicts set aside.*