COMMONWEALTH *vs.* LAWRENCE E. HEARN.

No. 90-P-11.

Suffolk. September 11, 1991. - December 30, 1991.

Present: ARMSTRONG, DREBEN, & GREENBERG, JJ.

*Homicide. Evidence*, Hearsay, Verbal completeness, Declaration against interest. *Due Process of Law*, Declaration against interest. *Malice. Practice, Criminal*, Instructions to jury. *Jury and Jurors.*

At a criminal trial the judge correctly excluded, on hearsay grounds, the proffered testimony of a police officer concerning an exculpatory statement the defendant had made after his arrest. [708-712]

At a murder trial, the judge's instruction with respect to malice, to which the defendant made no objection, created no substantial risk of a miscarriage of justice. [712]

Where the judge permitted the jury at a criminal trial to suspend their deliberations and separate for the night, after instructing them not to discuss the case and not to resume deliberations until all were present, the judge's omission to instruct them, pursuant to Mass.R.Crim.P. 20 (e) (2), to reconvene in the courtroom did not require reversal in the circumstances. [712-713]

INDICTMENTS found and returned in the Superior Court Department on June 10, 1988.

The cases were tried before *Sandra L. Hamlin*, J.

*Willie J. Davis* (*Marie Elena Saccoccio* with him) for the defendant.

*Lauren Inker*, Assistant District Attorney (*Daniel C. Mullane*, Assistant District Attorney, with her) for the Commonwealth.

The defendant, pro se, submitted a brief.

DREBEN, J. After an altercation at a Revere bar, the defendant revisited the scene with a gun looking for two of the participants in the fight. One of them, the victim, John Maragni, crossed the street towards the defendant's vehicle. Observers heard a loud noise and then saw the victim col-

lapse at the curb. The defendant was arrested for the murder of Maragni twelve days later in Denver, Colorado. The foregoing facts were presented at the defendant's trial, and he was convicted of second degree murder.[1]

In his appeal, he claims error in the exclusion of statements made by him to a Denver police officer following his arrest and in the failure of the jury to reconvene prior to commencing deliberations in violation of Mass. R. Crim. P. 20(e)(2), 378 Mass. 892 (1979). In a pro se supplemental brief, he also argues that the judge's jury instructions on malice set up a presumption which relieved the Commonwealth of its burden of proving malice. We affirm the convictions.

1. *Statements in Denver.* After a voir dire, Sergeant Hildebrant of the Denver police department, a witness for the Commonwealth, gave the following testimony at trial. Alerted by a detective from the Revere police department that the defendant was wanted for first degree murder and that his woman companion had requested money to be sent to Denver, Hildebrant and other members of the Denver police force found and arrested the defendant. He offered no resistance and, although he originally gave a different name, when asked if he was Lawrence Hearn, he acknowledged that he was. He was taken to the homicide unit at police headquarters where Hildebrant, after making a call to Revere police, gave the defendant his Miranda warnings. The defendant stated that he understood them and, asked whether he wanted to make a statement, said that he did. He signed a form acknowledging that he understood his rights and also signed another part of the form indicating that he wished to make a statement. Hildebrant then had a discussion with the defendant about what had happened in Revere, and the defendant later participated in a videotape interview pertaining to the incident. No portion of the statement or the videotape was offered in evidence.

---

[1]The defendant was also convicted of unlawfully carrying a firearm.

Commonwealth *v.* Hearn.

On cross-examination, Hildebrant testified that the defendant indicated that he had no qualms about talking "because the money that was coming in was going to be used to go back to Massachusetts anyway." The defendant's counsel then asked what the defendant had said concerning the Revere incident. The Commonwealth objected, claiming the defendant's statement was hearsay.

The substance of the statement had been elicited at the voir dire prior to Hildebrant's trial testimony. The defendant had told Hildebrant that there had been an altercation at a bar, a white man had made racial remarks, and the defendant had been "beat up" and thrown to the floor. After the bartender helped him out, he went to his ex-wife's home, obtained a gun and drove back to the bar. As one of the persons involved in the incident approached his car, he held the gun up to scare him. At that point, his foot slipped off the clutch, the car lurched and the gun went off. He then went to his woman friend's house, and they left the Commonwealth, going first to Florida, then to Chicago and Nebraska, and, ultimately, to Denver.

As indicated earlier, the Commonwealth objected to the admission of the statement on hearsay grounds. See *Commonwealth* v. *Stewart*, 411 Mass. 345, 355-356 (1991). The defendant questioned the purpose of the voir dire if the statement was not to be introduced[2] and argued that the statement was admissible under the doctrine of verbal completeness and also as an admission. Before ruling on the question, the judge read the authorities cited by the parties and also took a recess to determine what the jury had heard concerning the statement.

After reviewing the officer's testimony that had been heard by the jury, the judge found that no part of the statement was in evidence, and there were no "words used that might have characterized the statement." On this basis, she ruled

---

[2]The prosecutor explained that he wanted Hildebrant's testimony to set forth the circumstances of the arrest, cf. *Commonwealth* v. *Perez*, 27 Mass. App. Ct. 550, 554 (1989), and to establish the voluntariness of the statement in the event it was to be introduced later.

that the principles of verbal completeness were inapplicable and precluded questioning by the defendant's counsel as to what the defendant had said to Hildebrant regarding the Revere incident.

There was no error in the exclusion. The doctrine of verbal completeness, as explained in *Commonwealth* v. *Watson*, 377 Mass. 814, 823-834 (1979), is a limited one. "Where a statement has been offered against a defendant as an admission, the rule of verbal completeness allows the defendant to offer any other part of that same statement that explains or disproves the claimed admission." *Commonwealth* v. *Crowe*, 21 Mass App. Ct. 456, 478-479 (1986), citing *Commonwealth* v. *Watson*, *supra* at 832. Statements on other matters, even if made at the same time, are not admissible. *Watson*, *supra* at 828. Since no portion of the defendant's statement so far as it concerned the Revere incident was introduced, and only the portion relating to his willingness to talk was in evidence, the doctrine of verbal completeness is not applicable.

Moreover, the jury were not likely to infer that the excluded statement was inculpatory. This case is to be contrasted with *Commonwealth* v. *Riveiro*, 393 Mass. 224, 230 (1984). There, a voir dire as to voluntariness was improperly held in front of the jury and the jurors were keenly aware that the defendant was trying to exclude the statement on the ground that it was involuntary. He had objected several times to its introduction. Unlike *Riveiro*, the jury here knew that it was the defendant who wanted them to hear the statement.

Another argument made by the defendant on appeal is that the statement was admissible as a declaration against penal interest. This argument was not raised at trial and we examine the exclusion only to see if there was a substantial risk of a miscarriage of justice. We conclude there was no error, let alone such a risk.

The difficulty with the defendant's argument is that the statement does not meet the requirements expressed in Rule 804(b)(3) of the Federal Rules of Evidence (1985), the substance of which was adopted for Massachusetts in *Common-*

*wealth* v. *Carr*, 373 Mass 617, 623-624 (1977). As explained in *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986), quoting from *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978), the tests are: "(1) the declarant's testimony must be unavailable; (2) the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and (3) the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness."

At least two of the requirements were not met.[3] The defendant's explanation that the gun went off by accident — the defendant argues this was "the heart of his defense" — was obviously exculpatory. That he had a gun and that the victim was shot were not in dispute, and his statements to this effect cannot be considered harmful in view of the enormous advantage to him if he could convince the finder of fact that the shooting was accidental. Thus the defendant's statement does not meet the second of the above stated tests.

In addition, there are not corroborating circumstances indicating that the statement was trustworthy. The only evidence that the gun went off accidentally was the defendant's second version of the events given to his woman companion. The first version, which was told to her before he left Revere, was that he had been jumped by some men at a bar, that he left, obtained a gun and returned, and that he had shot one of them in the "face or head." Only later did he tell her that the shooting was an accident. This second version is not the trustworthy corroboration required by the rule governing admissibility.

The defendant's due process claims based on *Chambers* v. *Mississippi*, 410 U.S. 284, 302 (1973), and *Green* v. *Georgia*, 442 U.S. 95, 97 (1979), also fail. As stated in *Commonwealth* v. *Drew*, 397 Mass. at 72 n.6, "Generally, *Chambers-*

---

[3]We need not consider whether a defendant who chooses not to testify is unavailable. See *United States* v. *Evans*, 635 F. 2d 1124, 1126 n.1 (4th Cir. 1980), cert. denied, 452 U.S. 943 (1981). See also *United States* v. *Bennett*, 539 F. 2d 45, 54 (10th Cir.), cert. denied, 429 U.S. 925 (1976).

based claims have been consistently rejected by the courts."
It is only in "rare and unique circumstances" that "the ex-
clusion of evidence under hearsay rules defeats the ends of
justice and thereby violates the due process clause." *Id.* at
72. There was here none of the indicia of trustworthiness of
evidence such that its exclusion violated fundamental
fairness.

2. *Instructions on malice.* The defendant's pro se argu-
ment that the charge improperly created a presumption re-
lieving the Commonwealth of its burden of proof as to malice
is not borne out by the record. Moreover, there was no objec-
tion to the instruction. The discussion of malice, when con-
sidered in the context of the charge as a whole, particularly
the discussion of manslaughter, did not create a substantial
risk of a miscarriage of justice. See *Commonwealth* v. *Libby*,
411 Mass. 177, 181-182 (1991). Compare *Hill* v. *Maloney*,
927 F.2d 646, 651-652, (1st Cir. 1990).

In any event, the evidence that after the altercation, the
defendant was heard to say that "I'll be back," that he went
to his ex-mother-in-law's house to get a gun, that he returned
looking for the two men with whom he had fought, and that
when one of them approached his car he was shot, leads us to
conclude that the error, if any, was harmless; the verdict
would have been the same even if the judge's instruction
could be viewed as creating a presumption. See *Yates* v. *Ev-
att*, 111 S. Ct. 1884, 1893-1894 (1991). Contrary to the de-
fendant's claim, it is correct to instruct that malice does not
require a showing of ill will. See *Commonwealth* v. *Hodge*,
(No. 2), 380 Mass. 858, 865 (1980).

3. *Failure of the jury to reconvene in courtroom.* After
instructing the jury, the judge, noting that they had had a
long day, permitted them to go home for the night. She
failed to instruct them to reconvene in the courtroom, see
Mass.R.Crim.P. 20(e)(2), 378 Mass. 892, (1979),[4] but did

---

[4]That provision reads as follows:

"(2) *After Submission of the Cause.* Unless the jurors have been
sequestered for the duration of the trial, the judge after the final
submission of the case, may order that the jurors be permitted to

instruct them not to discuss the case with anyone, and not to begin deliberations until all were present. Defense counsel did not object to the instructions. As in *Commonwealth* v. *Ford*, 20 Mass. App. Ct. 575, 579 (1985), *S.C.*, 397 Mass. 298 (1986), the defendant has not attempted to show that the jury's deliberations were infected in any way. The rule should be followed, but the mistake does not warrant reversal. See *Commonwealth* v. *Romero*, 25 Mass. App. Ct. 51, 53-54 (1987) (violation of Mass.R.Crim.P. 20[e][3] did not warrant reversal).

*Judgments affirmed.*

separate for a definite time to be fixed by the judge and then reconvene in the courtroom before retiring for consideration of their verdict."