David Sidney LOWERY

v.

STATE OF MARYLAND.

Civ. No. Y–74–890.

United States District Court,
D. Maryland.

Oct. 14, 1975.

---

Edward Fremont Magee, Baltimore, Md., for petitioner.

James G. Klair, Baltimore, Md., for respondent.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The petitioner, David Sidney Lowery, was found guilty of murder in the first degree by a Baltimore City Criminal Court jury in October, 1970, and received the mandatory life sentence. Having exhausted his state remedies, Lowery filed a petition for habeas corpus relief in the federal courts, alleging that the prosecution at his murder trial knowingly used perjured testimony to obtain his conviction. He supports that allegation with a sworn affidavit from the State's chief witness at his trial, John L. Dixon, in which Dixon states that he testified falsely against Lowery and that he did so under pressure from his police interrogators.

This Court scheduled an evidentiary hearing on Lowery's claim on July 11, 1975. When Dixon failed to appear, petitioner attempted to introduce the affidavit into evidence, prompting objec-

tions by the State on the ground that it was hearsay, and by Dixon's attorney, on the ground that its introduction would violate Dixon's Fifth Amendment privilege against self-incrimination.

■ Admitting Dixon's affidavit into evidence will not violate his Fifth Amendment privilege. In *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), *aff'g*, 449 F.2d 141 (4th Cir. 1971), the Supreme Court, by enforcing an IRS summons for a taxpayer's papers in the possession of his accountant, denied the taxpayer's claim that such papers were privileged under the Fifth Amendment. The Court emphasized that this privilege is an intimate and personal one and that "[i]t is extortion of information from the accused himself that offends our sense of justice." *Couch, supra* at 328, 93 S.Ct. at 616. Here, for unknown reasons, Dixon's affidavit was in the possession of Lowery. As in *Couch*, the essential ingredient of personal compulsion against Dixon is lacking.

The Court in *Couch* acknowledged that possession of the document is not always required to be able to assert validly the privilege. The accused may validly claim the privilege if he has constructive possession of the paper. *See United States v. White*, 477 F.2d 757, 763, *aff'd en banc*, 487 F.2d 1335 (5th Cir. 1973), *cert. denied*, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). However, it could not and has not been argued that Dixon gave his affidavit to Lowery merely for custodial safekeeping. Dixon has not retained any constructive possession of the document.

Although *Couch* and the other cases discussing this issue are proceedings to enforce IRS summonses, the general principles are applicable to this case. *See, e.g., United States v. White, supra*; *United States v. Schoeberlien*, 335 F. Supp. 1048 (D.Md.1971). No cases have been cited in the parties' memoranda nor has research disclosed any cases which refute the principles of *Couch*. *Ottomano v. United States*, 468 F.2d 269

(1st Cir. 1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260, *reh. denied*, 410 U.S. 948, 93 S.Ct. 1383, 35 L.Ed.2d 616 (1973), cited by Dixon, held that oral testimony at a prior proceeding does not estop that person from refusing to testify orally at a later proceeding. The court even states that if Ottomano testified at his co-indictee's trial that testimony could later be used against him. Dixon's assertion of his Fifth Amendment privilege is not valid and the admission of his affidavit would not violate that privilege.

The issue whether the affidavit is admissible as an exception to the hearsay rule presents a greater problem. There is no disagreement that Dixon's affidavit is hearsay as it is a statement offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Petitioner asserts that the affidavit comes within either Fed.R.Evid. 804(b)(3), as a statement against penal interest, or within Fed.R.Evid. 804(b) (5), which is entitled "other exceptions."

■ Before either of these exceptions to the hearsay rule may be applied, the declarant must be unavailable as a witness. Declarant is unavailable if he is exempted by ruling of the court on the ground of privilege, Fed.R.Evid. 804(a). This Court has made no such ruling. However, Dixon does have a valid privilege not to testify orally, which he has not waived. *See United States v. Lawrenson*, 315 F.2d 612 (4th Cir.), *cert. denied*, 373 U.S. 938, 83 S.Ct. 1542, 10 L.Ed.2d 693 (1963), and cases cited therein. Even if Dixon is compelled to testify, he would still be considered unavailable as a witness if he has refused to do so, Fed.R.Evid. 804(a)(2), and Dixon's attorney has indicated that Dixon would refuse to testify even if compelled to do so. By any applicable theory, Dixon is unavailable as a witness.

■ A declarant's statement qualifies as an exception to the hearsay rule once it is shown that the declarant is unavailable and the statement subjects him to criminal liability. Again the parties do

not dispute that Dixon's statement subjects him to criminal liability. Since his statement, if true, is an admission of perjury (assuming his testimony at the trial was wilfully given), the affidavit constitutes a statement against penal interest. Nevertheless, Congress required that before a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is admissible, there must be corroborating circumstances clearly indicating the truthworthiness of the statement.

■ The first determination to be made is whether Dixon's statement comes within this special class of statements against penal interest. There is no doubt that his statement is offered to exculpate the accused. However, Dixon, in his affidavit, never admits to committing the crime for which Lowery was convicted, but only that he did not testify truthfully at the trial. The Advisory Committee notes to Rule 804, printed in 28 U.S.C.S. App. 546, refer only to confessions by third parties offered to exculpate the accused. The Advisory Committee sensed in court decisions a distrust of such evidence. It could be argued that Dixon's statement is not a confession to the crime for which Lowery was convicted and, therefore, no additional corroboration is needed to admit it. However, many court decisions have shown a similar distrust of statements recanting former testimony, *see, e.g.*, *United States v. Johnson*, 487 F.2d 1278 (4th Cir. 1973) ("such recantation is 'looked upon with the utmost suspicion'"), and the House Committee on the Judiciary referred in its report to Congress to statements against penal interest which tend to exculpate the accused and not specifically to confessions. *See,* H.Rep. No. 93–650, 93d Cong., 1st Sess., 16, printed in 28 U.S.C.S.App. 159. Congress wisely included statements such as Dixon's in the classification requiring corroboration of trustworthiness.

It must also be determined what constitutes sufficient corroboration and whether Dixon's statement has been corroborated. The Advisory Committee's notes stated that the "requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication." Advisory Committee notes printed in 28 U.S.C.S. App. 547. The House Committee deemed the Supreme Court's simple corroboration test to be ineffective and adopted the language "unless corroborating circumstances clearly indicate the trustworthiness of the statement." H. Rep. No. 93–650, *supra* at 16. The Senate adopted this language without comment. Thus, except to indicate that simple corroboration is not enough, no clues are given as to what constitutes corroborating circumstances.

It has been suggested that the "court should only ask for sufficient corroboration to 'clearly' permit a reasonable man to believe that the statement might have been made in good faith and that it could be true," Weinstein's evidence, para. 804(b)(3)[03], pp. 804–90, and that evidence that he was near the scene and had some motive or background connecting him with the crime should suffice. *Id.* at 804–91. But Congress rejected this simple corroboration test.

In *State v. Higginbotham*, 298 Minn. 1, 212 N.W.2d 881 (1973), the court followed the approach of the Fed.R.Evid. 804(b)(3) and upheld a ruling that a third party's confession was inadmissible, relying on the fact that the confession was given to the police at 2:30 a.m., that the confessor was reportedly on LSD, and that he refused to testify at the trial. However, the court in *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (Mo.1945), suggested that a witness' refusal to testify assured the reliability of his affidavit in which he stated he had perjured himself in a civil trial. If the affidavit were untrue, the court opined that he would have taken the stand to repudiate it. But this forced reasoning falls short of the mark. The failure of the declarant to testify at a hearing affords no inference of reliabili-

ty to Dixon who may not wish to say that he lied at Lowery's trial or may not wish to admit he lied in his sworn statement.

The spontaniety of a confession after a crime had been committed was one indicia of reliability relied upon in ruling that a confession was admissible as an exception to the hearsay rule. *See Chambers v. Mississippi,* 410 U.S. 284, 300, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

█ In the case under consideration the facts supporting reliability are that Dixon's statement was sworn to before a prison official and that he was at the scene of the crime. Also, Lowery states that he testified at the hearing on July 11 that Dixon voluntarily produced the statement. But the sworn statement was made when Dixon was in prison with Lowery three and a half years after the crime had occurred and over three years after the trial. The affidavit certainly is not spontaneous, and the police officers testified at the hearing, that, contrary to Dixon's statements, they did not threaten Dixon and gave him no inducement.

█ Lowery asserts that if the Court rules that Dixon's statement is not admissible under Fed.R.Evid. 804(b)(3), then it should be admissible under Fed.R.Evid. 804(b)(5). However, Lowery ignores the first of the four necessary conditions to admissibility, *i.e.,* the statement must have equivalent circumstantial guarantees of trustworthiness as the other hearsay exceptions. *See* S. Rep. No. 93–1277, 93d Cong., 2d Sess. 19, *printed in* 28 U.S.C.S.App. 191. It was the intent of Congress that this exception be used rarely and only in exceptional circumstances. Since statements such as Dixon's are covered by Rule 804(b)(3), the admissibility cannot be considered under 804(b)(5).

To summarize, admitting into evidence Dixon's affidavit would not violate his Fifth Amendment privilege against self-incrimination. However, his statement is hearsay and lacking corroborating circumstances, indicating its trustworthiness, is not admissible as an exception to the hearsay rule.

Having concluded that the affidavit of Dixon is inadmissible, petitioner's case lacks any probative evidence justifying further consideration by this Court.

Accordingly, it is this 14th day of October, 1975, by the United States District Court for the District of Maryland, ordered:

That the petition be, and the same is, hereby dismissed.