**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rowland Chester THOMAS,**
**Defendant-Appellant.**

**No. 77–5157.**

United States Court of Appeals,
Fifth Circuit.

April 13, 1978.

Maurice S. Bell, George W. Cameron, Jr., Montgomery, Ala., for defendant-appellant.

Barry E. Teague, U. S. Atty., D. Broward Segrest, First Asst. U. S. Atty., David L. Allred, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, HILL and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

This case requires us to consider the dimensions of Federal Rule of Evidence 804(b)(3), which excepts from the hearsay rule statements against penal interest made by a declarant whose testimony is unavailable at trial. The appellant, Thomas, was tried for bank robbery jointly with Weeks. At trial Thomas sought to place a U.S. Magistrate on the stand to testify that Weeks, at the close of the preliminary hearing for all those indicted in the robbery, made statements exculpating Thomas. The trial judge ruled the evidence inadmissible, and both Thomas and Weeks were convicted. Only Thomas has appealed. We reverse his conviction.

Thomas, Weeks, and a third alleged participant, Echols, were accused of robbing a bank in Tuskegee, Alabama, where Thomas was a student at Tuskegee Institute, on December 1, 1976. Echols pleaded guilty and testified at trial for the government. Weeks did not testify. Echols gave the only account of the planning and execution of the robbery.

According to Echols, Weeks approached him the day before the robbery, and Echols agreed to Weeks' scheme. They met the next morning and drove to Weeks' apartment. Echols stated on cross-examination that during this ride Weeks mentioned that he had gotten "Rowland [Thomas] to drive for it." When Echols and Weeks reached Weeks' apartment, Thomas was waiting in his car in the parking lot. Thomas drove Weeks and Echols to the bank and let them out after circling the block at least once. Before leaving the car, Weeks instructed Thomas to pick them up on a designated corner. After holding up the bank, Echols and Weeks were picked up by Thomas and returned to their apartments. According to Echols, there was no discussion about the robbery while he and Weeks were in Thomas' car.

Thomas testified that he had never discussed the robbery with Weeks. Rather, on the morning of the robbery, as he was driving down the street, he passed Weeks and Echols driving in the opposite direction. Weeks waved Thomas down and asked Thomas to follow him to Weeks' apartment. Thomas agreed and turned his car around. While on the way to the apartment Weeks and Echols pulled their car over but waved Thomas onward. Thomas thus reached the apartment before Weeks and Echols. At the apartment Weeks asked Thomas to take him and Echols to the post office and bank. After Thomas let Weeks and Echols out at the bank he went to visit a friend, but the friend did not answer his door. Thomas then returned to pick up Weeks and Echols. As the two got into the car, Thomas saw a pillowcase full of money. He testified that

this was the first time he knew he had been involved in a bank robbery. Thomas received none of the proceeds.

Thomas sought to introduce as exculpatory the testimony of the U.S. Magistrate who had conducted the preliminary hearing. Thomas contended, and the government was willing to stipulate, that after the hearing but before leaving the courtroom Weeks had stated "they ought to let Rowland Thomas go, he didn't have anything to do with it." Weeks made the statement not only within the hearing of the Magistrate but also in the presence of the attorneys for the prosecution and for the defendants and a newspaperman. The court rejected the offer of proof, stating that the government could introduce the statement but Thomas could not. The court was troubled by the possibility that introduction of the statement by Thomas would necessitate a mistrial for Weeks.

■ We hold that the statement was admissible when offered by Thomas because it was a statement against penal interest qualifying as an exception to the hearsay rule under Federal Rule of Evidence 804(b)(3).[1] To be admissible under 804(b)(3), a statement must meet three tests: the declarant's testimony must be unavailable; the statement must so far tend to subject the declarant to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true"; and the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness.

■ Weeks' testimony was clearly unavailable under Rule 804(a)(1), which defines unavailability to include declarants not testifying because of privilege. Weeks did not take the stand, obviously relying on the

privilege against self-incrimination. His unavailability based on the Fifth Amendment privilege satisfies 804(a)(1). *See U. S. v. Mackin*, 561 F.2d 958 (CA2, 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977). Rule 804(a)(1) requires an express assertion of the privilege and a ruling by the court that the privilege constitutes unavailability, *see* 4 Weinstein's Evidence ¶ 804(a)[01] (1976), but here the existence of the privilege and Weeks' right to assert it and Weeks' unavailability as a witness are patent. The trial court declared the evidence inadmissible before reaching issues raised by Rule 804. It would be mere formalism to abjure the merits of Thomas' claim in these circumstances. *See U. S. v. Oropeza*, 564 F.2d 316, 325 n. 8 (CA9, 1977).

■ The statement offered by Thomas satisfies the requirement that it be against Weeks' penal interest. The government argues that Weeks' statement was not against his penal interest because he did not expressly confess to the crime involved. We do not read Rule 804(b)(3) to be limited to direct confessions of guilt. Rather, by referring to statements that "tend" to subject the declarant to criminal liability, the Rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant. Thus, in *U. S. v. Bagley*, 537 F.2d 162 (CA5, 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed.2d 794 (1977), we held to be against penal interest a statement that the declarant had given the accused a package of heroin instead of a package of Valium. Although the statement did not confess to the crime charged against the accused (possession with intent to distribute heroin), the statement implied the declarant's guilt of a felony, knowing possession of heroin.

In circumstances even more analogous to the present case, the First Circuit held a

---

1. Rule 804(b)(3) provides:

   *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a

reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

statement to be against penal interest. In *U. S. v. Barrett*, 539 F.2d 244 (CA1, 1976), the deceased declarant Tilley had discussed the crime being tried. The accused presented a witness to testify that Tilley had stated during this conversation "Bucky [the accused] wasn't involved. It was Buzzy." The court held the statement admissible under 804(b)(3) because

[W]e think that Tilley's [the declarant's] alleged remarks sufficiently tended to subject him to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true." Although the remarks did not amount to a clear confession to a crime . . . we do not understand the hearsay exception to be limited to direct confessions. See Note, *Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule*, 57 Bost.U.L. Rev. 148, 158 (1976). A reasonable person would have realized that remarks of the sort attributed to Tilley strongly implied his personal participation in the . . . crimes and hence would tend to subject him to criminal liability. Though by no means conclusive, the statement would be important evidence against Tilley were he himself on trial for the . . . crimes. We cannot say, therefore, that it did not pose the sort of threat to Tilley's interest that the hearsay exception contemplates. *See id.* at 156–58.

\* \* \* \* \* \*

Nor do we overlook the fact that exculpating Barrett [the accused] was not in itself against Tilley's interest, since both could have participated in the crime. . . In Barrett's trial, the relevance of Tilley's participation is limited to the credence it gives to his views on who else took part. The district court seemed to suggest that in order for exculpatory remarks such as Tilley's to be admissible as against interest, the innocence of the accused must itself be prejudicial to the declarant. On the present facts, we read the first part of Rule 804(b)(3) more broadly, and conclude that so much of Tilley's remarks as exculpated "Bucky" and inculpated "Buzzy" should here be considered as part of the statement against Tilley's interest.

■ We conclude that Weeks' statement would not have been made by "a reasonable man in his position . . . unless he believed it to be true." Weeks made the statement exculpating Thomas at the close of the preliminary hearing at which Weeks had entered a plea of not guilty. The statement was not elicited by questioning, was facially spontaneous, and was made in the presence of the U.S. Magistrate, Thomas, the attorneys for the government and his codefendants, and a newspaper reporter. Moreover, the statement, which implies that the declarant has knowledge of the crime, was inconsistent with Weeks' plea of not guilty and would have probative value in the government's case against him. All these circumstances lend credibility. We conclude that the statement falls within the letter and rationale of the exception provided in Rule 804(b)(3).[2]

■ The trial judge ruled that the statement could be offered by the government but not by Thomas. A statement exculpating the accused and admissible under Rule 804(b)(3) does not become inadmissible merely because it tends to inculpate the codefendant declarant. The statement may be offered by the government to inculpate the declarant or by the accused to exculpate himself. *See* Advisory Committee Note to Rule 804(b)(3). Thus, Weeks would not have been entitled, had Thomas used the statement, to a mistrial and a new trial severed from Thomas. The statement would be admissible against Weeks in a separate trial, thus obviating the need for severance. Moreover, Weeks has no legitimate objection to the statement. It is not hearsay as to him because it is not offered for the truth of the matter asserted— Thomas' innocence—but is used to show

---

**2.** The statement could have been admitted alternatively under the residual hearsay exception of Rule 804(b)(5).

Weeks' guilty knowledge of the crime. *See* Rule 801(c). Therefore, the trial judge's refusal of the statement to protect Weeks' interest was incorrect.

■ The statement was thus admissible under Rule 804(b)(3) if "corroborating circumstances clearly indicate the trustworthiness of the statement." Because the trial judge never reached this final question under Rule 804(b)(3), we are not bound to the "clearly erroneous" standard of review specified in *U. S. v. Bagley, supra.* Rather, we look to the record to adduce the corroboration for Weeks' statement.

The record clearly indicates the trustworthiness of the statement. Even according to government witness Echols, Thomas was only marginally involved in the robbery; he did not assist in the planning, and the details of the robbery were never discussed in front of him. Echols received money from Weeks, but Thomas did not. Weeks gave his clothes to Echols and told Echols to burn them and his [Echols'] also. Thomas' clothes were not included in these instructions. No one other than Echols was able to tie Thomas to the robbery. The only evidence to contradict Thomas' seemingly marginal connection with the robbery was Echols' testimony that Weeks told him on the morning of the robbery that Thomas would drive and Echols' statement that Thomas suggested circling the bank until the customers inside left. Echols, however, testified that Weeks planned the robbery and secured Thomas' participation. Thus, Weeks' statement exculpating Thomas is given credibility because of Echols' characterization of Weeks as the mastermind and conduit to Thomas.

■ The statement has additional credibility because the possibility of fabrication, which is the rationale of the corroboration requirement, is slight. Weeks made the statement spontaneously in front of a number of people, and the witness to the statement, a U.S. Magistrate, is entitled to credibility. *See U. S. v. Bagley, supra.* Weeks had no motive to falsify (unlike Echols, who had pleaded guilty to a lesser count of the indictment) and, indeed, incurred personal risk in making the statement. Under these facts, we hold that corroborating circumstances clearly indicate the trustworthiness of the statement.

We need not reach the issue raised on appeal of Thomas' right to a severance. Since Weeks did not appeal, any retrial would be of Thomas alone, obviating the need for a severance. The conviction is REVERSED.