COMMONWEALTH vs. CARL H. DREW.

Bristol. November 4, 1985. — March 12, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Constitutional Law*, Right to obtain testimony, Witness. *Practice, Criminal*, Attendance of witnesses, Location of defendant in courtroom, Instructions to jury. *Evidence*, Hearsay, Common criminal enterprise. Declaration against interest, Relevancy and materiality, Other offense. *Due Process of Law*, Declaration against interest.

The judge at a murder trial did not abuse his discretion in denying the defendant's request for a writ of habeas corpus ad testificandum to procure the attendance of an inmate-witness to testify as to the contents of a note written by a third party in a jail cell several months after the crime, where, since the offered testimony was hearsay and not admissible under the exception to the hearsay rule for statements of a coconspirator, the attendance of the witness could not be said to be "necessary to an adequate defense" [69-71]; nor were the type of rare and unique circumstances presented in which the exclusion of the statements under the hearsay rule defeats the ends of justice and thereby violates the defendant's Federal constitutional right of due process [71-72].

At a murder trial, the judge's denial of the defendant's request for a writ of habeas corpus ad testificandum to procure the attendance of an inmate-witness to testify as to the contents of a note written in a jail cell several months after the crime by a third party, whose testimony the defendant contended, for the first time on appeal, would have been admissible under the exception to the hearsay rule for admissions against penal interest, created no substantial risk of a miscarriage of justice where the testimony was not admissible because there were no corroborating circumstances that clearly indicated the trustworthiness of the statement and thus, since the testimony was inadmissible, the declarant was not a witness necessary to the defense under Mass. R. Crim. P. 17 (b). [73-78]

At a murder trial, the judge did not err in admitting over objection evidence regarding the defendant's participation in Satanic cult rituals, where the evidence showed the entire relationship between the victim and the defendant and was inextricably interwined with the description of events that transpired on the night of the killing. [78-79]

At a murder trial, evidence of the defendant's alleged involvement in an earlier murder was properly admissible, in the judge's discretion, to show motive, to demonstrate the victim's state of mind, and to establish the entire relationship between the defendant and the victim. [79-80]

In the circumstances, the defendant in a murder case was not prejudiced by the judge's denial of his pretrial motion to allow him to be seated at counsel table during his trial. [80-81]

At a murder trial, the judge's instructions to the jury as to how they were to evaluate the credibility of witnesses, which equated their decisions with those encountered in their daily lives, created no risk of a miscarriage of justice. [82]

In the circumstances, the coincidental similarity of the "stolen jewelry" example used by the judge in a murder case in instructing the jury on the use of inferences and the fact that jewelry found near the victim's remains was a factor in identifying the victim was not error by reason of any tendency to induce the jurors to believe that the judge was expressing his belief in the Commonwealth's proof concerning the identity of the body. [82-83]

At a murder trial, the judge's instructions to the jury regarding the use of prior convictions for impeachment purposes, viewed in the context of his entire charge, were sufficient to inform the jury that they were the ultimate arbiters of credibility, and that it was for them to decide whether, and to what extent, a conviction of a particular crime may affect credibility. [83]

INDICTMENT found and returned in the Superior Court Department on May 9, 1980.

The case was tried before *Francis W. Keating, J.*, and a motion for a new trial was heard by him.

*Francis M. O'Boy* for the defendant.

*Patricia O. Ellis,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Carl H. Drew, was convicted of murder in the first degree and sentenced to a term of life imprisonment at the Massachusetts Correctional Institution, Cedar Junction. The defendant's motion for a new trial was denied.[1] On appeal, the defendant contends that the trial judge erred in (1) refusing to issue a writ of habeas corpus ad tes-

_____

[1] Prior to the entry of the defendant's appeal in this court, the defendant filed a motion for new trial in the Superior Court. That motion was filed pursuant to Mass. R. Crim. P. 30, 378 Mass. 900 (1979). The motion raised the same issues that were raised at trial, and apparently was filed to avoid an appeal, if possible. Because the appeal had not been entered in this court, the judge could consider the motion. See G. L. c. 278, § 33E (1984 ed.).

tificandum to procure the attendance of a witness necessary to his defense; (2) allowing the introduction of evidence regarding the defendant's alleged participation in Satanic cult rituals; (3) allowing the introduction of evidence of other crimes allegedly committed by the defendant; (4) denying the defendant's motion to sit at counsel table during trial; and (5) instructing the jury. The defendant also requests that we exercise our power under G. L. c. 278, § 33E. We affirm the conviction. We conclude there is no reason to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

We first sketch the facts as they may have appeared to the jury, later adding additional detail as needed for analysis. On April 13, 1980, a portion of a human skull was found in the woods near an area known as "Family Beach" in Westport, Massachusetts. A subsequent search of the area yielded various items of clothing, bloodstained rocks, jewelry, and a clump of hair. The remains were identified as those of the victim, Karen Marsden, a young woman from Fall River.

From February to November, 1979, Marsden had worked for the defendant as a prostitute in the Bedford Street area of Fall River. In the summer of 1979, Marsden met Robin Murphy, who was also acquainted with the defendant. There was evidence that Marsden and Murphy, along with other prostitutes and pimps from the Fall River area, attended Satanic ritual meetings conducted by the defendant. On the evening of October 12, 1979, while in the presence of Marsden, Murphy, and another, the defendant killed another prostitute, Doreen Levesque. According to Murphy's testimony,[2] the killing was performed as a diabolic ritual during which the soul of Marsden was purportedly given to Satan.

Following the death of Levesque, the relationship between Marsden and the defendant deteriorated. Marsden attempted to sever her relationship with the defendant and with the Satanic

---

[2] Murphy was indicted for the murder of Karen Marsden and pleaded guilty to murder in the second degree. In exchange for testifying truthfully, she was granted immunity from further prosecution in the matter and for her involvement in the death of Doreen Levesque.

cult. Marsden and the defendant frequently argued and the defendant threatened to kill her on several occasions. In December, 1979, Marsden went into hiding from the defendant. She began living with Murphy and another woman, Carol Fletcher. Also at this time, Marsden met five or six times with an officer of the Massachusetts State police who was investigating the death of Levesque. During December, 1979, and January, 1980, the defendant made repeated inquiries as to Marsden's whereabouts. On February 4, 1980, he told Fletcher that "in the right time and the right place he was going to kill Karen."

On the evening of February 8, 1980, Marsden, Fletcher, and Murphy were riding in Fletcher's automobile along Bedford Street. At some point, the defendant got into the car, along with one Carl Davis. Davis directed Fletcher to drive to Family Beach in Westport. When the group arrived there, the defendant ordered Murphy to take Marsden out of the car. Murphy dragged Marsden by the throat and hair into the woods. As she did this, the defendant walked alongside while Fletcher and Davis followed close behind. Murphy and the defendant then began striking Marsden with rocks. After further brutalizing Marsden, the defendant ordered Murphy to slit Marsden's throat and Murphy complied. The defendant then tore the head from the body and kicked it. Some months later, the defendant admitted to Lea Johnson, who was then working for and living with the defendant, that he had killed "a girl" in the presence of Murphy, Davis, and another woman. He recounted in detail how she had been killed, and told Johnson that he had killed the girl "because she wanted to leave the cult" and that "he wanted her to feel pain."

The defendant presented a defense of alibi. He testified that he had spent the evening of the murder in two bars on Bedford Street. Margarida Revorido testified that she worked for the defendant that evening as a prostitute and that she was never out of the defendant's presence for longer than fifteen or twenty minutes. On cross-examination, Revorido admitted that she was always with the defendant on Friday evenings, and that she had no way of distinguishing Friday, February 8, from any other Friday.

1. *The denial of the request for a writ of habeas corpus ad testificandum.* The defendant asserts that the judge erroneously denied his request for a writ of habeas corpus ad testificandum to procure the attendance of an inmate-witness. The defendant contends that this denial precluded his Sixth Amendment rights to present a defense.[3]

The defendant called Carl Davis as a witness. At a voir dire hearing, Davis invoked his Fifth Amendment privilege against self-incrimination and refused to testify. The defendant then requested that a writ of habeas corpus ad testificandum be issued for one Raymond Bertrand. The judge denied the request. The defendant's counsel, on the record, made an offer of proof in which he indicated that had the writ of habeas corpus been issued, Bertrand would have testified to the following facts. Following their indictments for the murder of Karen Marsden, the defendant and Carl Davis were incarcerated together in the Bristol County house of correction awaiting trial. On August 29, 1980, while in the presence of the defendant and Bertrand, Davis allegedly wrote out a statement in which he admitted "being present at the scene of the homicide and doing certain acts concerning it." Davis allegedly described who was present and specifically excluded the defendant, writing, "I don't know why Carl Drew's name was mentioned, he wasn't there." After writing this statement, Davis purportedly showed it to the defendant and to Bertrand, but then destroyed it, and refused to write another copy. At the defendant's request, Bertrand wrote down his recollection of Davis's statement.

Rule 17 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 885 (1979), requires a judge to issue a summons for a named witness on a showing by an indigent defendant that the witness is "necessary to an adequate defense." The rule is rooted in the defendant's right under the Sixth Amendment to the United States Constitution to "offer the testimony of witnesses, and to compel their attendance, if necessary,

---

[3] The defendant relies solely on a claim of violation of his Federal constitutional rights.

[which] is in plain terms the right to present a defense, the right·to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington* v. *Texas,* 388 U.S. 14, 19 (1967). Both the United States Supreme Court's formulation of this right, and its manifestation in our rule 17 (b), extend only to witnesses who are "necessary" to the defense. Because the determination of necessity requires the trial judge to consider the proffered testimony in the light of other evidence, there is inevitably an element of discretion in the judge's determination, reversible for an abuse of that discretion or an error of law. See *United States* v. *Garza,* 664 F.2d 135, 141 (7th Cir. 1981), cert. denied, 455 U.S. 993 (1982); *United States* v. *DeCoteau,* 648 F.2d 1191, 1192 (8th Cir. 1981). See also *Commonwealth* v. *Watkins,* 375 Mass. 472, 489 (1978). The defendant sought to compel the testimony of an inmate-witness concerning the contents of a note written by Davis. The offered testimony thus would be hearsay, and unless it was admissible under an exception to the hearsay rule, the attendance of the witness cannot be said to be "necessary."

In his offer of proof, the defendant contended that Bertrand's testimony should be admitted under the exception to the hearsay rule for statements of a coconspirator.[4] The judge correctly rejected that argument. In this Commonwealth, "[i]t is well settled that, to be admissible against a defendant, the out-of-court statements of coconspirators or joint criminal venturers must have been made during the pendency of the criminal enterprise and in furtherance of it. See, e.g., *Commonwealth* v. *White,* 370 Mass. 703, 708-709 (1976); *Commonwealth* v.

---

[4] At trial and at the hearing on the motion for a new trial, the defendant relied on *Dutton* v. *Evans,* 400 U.S. 74 (1970), and *Bruton* v. *United States,* 391 U.S. 123 (1968). Neither case is helpful to the defendant. In *Dutton,* the Supreme Court concluded that Georgia's evidentiary rule, allowing the admission of a coconspirator's statement made during the concealment phase of the conspiracy, did not violate the defendant's right to confront the witnesses against him because the witness could be cross-examined. In *Bruton,* the Supreme Court determined that a confession by one defendant implicating a nonconfessing codefendant could not be admitted at a joint trial because of the nonconfessing defendant's Sixth Amendment right of confrontation.

*Flynn,* 362 Mass. 455, 477 (1972) ('the same general rule of evidence applies to cases where a conspiracy or common enterprise is shown to exist even though not charged')." *Commonwealth* v. *Borans,* 379 Mass. 117, 146 (1979). See *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 340, 342-343 (1983). Because Davis's statement was made long after the crime while he and the defendant were imprisoned, the statement was not admissible.

Nor does the exclusion of Bertrand's testimony violate the defendant's Federal constitutional right of due process.[5] The United States Supreme Court has held that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers* v. *Mississippi,* 410 U.S. 284, 302 (1973). In *Chambers,* the defendant was prevented under Mississippi's evidentiary rules from cross-examining one McDonald, who had confessed to the crime but subsequently recanted, and from introducing the testimony of witnesses to McDonald's confessions. The Supreme Court reversed the conviction because the indicia of trustworthiness of McDonald's confessions were so overwhelming that exclusion of evidence of the confession was a violation of fundamental fairness. McDonald was not a codefendant, had spontaneously confessed the crime to close friends on three separate occasions within twenty-four hours of its occurrence, and gave a subsequent sworn confession. *Id.* at 287-300. In addition, one eyewitness stated that he saw McDonald shoot the victim, and another stated that he had seen McDonald with a gun in his hand immediately after the shooting, so that each confession was corroborated by some other evidence. *Id.* at 289, 300. Finally, McDonald was available as a witness and could have been cross-examined. *Id.* at 301.

Similarly, in *Green* v. *Georgia,* 442 U.S. 95 (1979) (per curiam), the Supreme Court held that it was a violation of due process to exclude on grounds of hearsay a codefendant's con-

---

[5] We treat the defendant's citation at trial to *Dutton* v. *Evans, supra,* and *Bruton* v. *United States, supra,* see note 4, *supra,* as sufficient to raise the issue whether the exclusion of Bertrand's testimony violated the defendant's due process rights.

fession that was "highly relevant to a critical issue in the punishment phase of the trial . . . and [where] substantial reasons existed to assume its reliability." *Id.* at 97. The Court analyzed the case as follows: "The evidence corroborating the confession was ample, and indeed sufficient to procure a conviction of Moore [the codefendant] and a capital sentence. The statement was against interest, and there was no reason to believe that Moore had any ulterior motive in making it. Perhaps most important, the State considered the testimony sufficiently reliable to use it against Moore, and to base a sentence of death upon it." *Id.*

"The record before us is barren of any showing that the excluded evidence was circumstantially trustworthy or bore 'considerable assurance of . . . reliability.' *Chambers* v. *Mississippi, supra* at 300." *Commonwealth* v. *Wilborne,* 382 Mass. 241, 248 (1981). The statement was not made spontaneously, but in a jail cell in the defendant's presence, almost seven months after the crime. Davis's admission was made only once, and he promptly tore up the writing. Apart from the admission of being present at the murder scene, Davis did not disclose any details of the killing or of his personal involvement that were corroborated by other evidence. The defendant has not shown that his case presents the type of rare and unique circumstances[6] in which the exclusion of evidence under hearsay rules defeats the ends of justice and thereby violates the due process clause. *Green* v. *Georgia, supra* at 97. *Chambers* v. *Mississippi, supra* at 302.

---

[6] Generally *Chambers*-based claims have been consistently rejected by the courts. *Commonwealth* v. *Carr,* 373 Mass. 617, 625 & n.13 (1977). See, e.g., *Perry* v. *Rushen,* 713 F.2d 1447 (9th Cir. 1983), cert. denied, 469 U.S. 838 (1984); *Trussell* v. *Estelle,* 699 F.2d 256 (5th Cir.), cert. denied, 464 U.S. 853 (1983); *United States* v. *MacDonald,* 688 F.2d 224 (4th Cir. 1982), cert. denied, 459 U.S. 1103 (1983); *United States* v. *Hinkson,* 632 F.2d 382 (4th Cir. 1980); *Lipinski* v. *New York,* 557 F.2d 289 (2d Cir. 1977), cert. denied, 434 U.S. 1074 (1978). But see *Green* v. *Georgia, supra; Pettijohn* v. *Hall,* 599 F.2d 476, 482 (1st Cir.), cert. denied, 444 U.S. 946 (1979); *United States* v. *Benveniste,* 564 F.2d 335 (9th Cir. 1977); *Welcome* v. *Vincent,* 549 F.2d 853 (2d Cir.), cert. denied sub nom. *Fogg* v. *Welcome,* 432 U.S. 911 (1977).

On appeal, the defendant argues that Bertrand's testimony was necessary to his defense and that the testimony would have been admissible under the exception to the hearsay rule for admissions against penal interest. See *Commonwealth* v. *Carr*, 373 Mass. 617 (1977). Because this theory was not raised at trial, we review the exclusion of this statement pursuant to G. L. c. 278, § 33E. See *Commonwealth* v. *Rodwell*, 394 Mass. 694, 698 n.2 (1985). We conclude that there is no error and no risk of a miscarriage of justice.

In *Commonwealth* v. *Carr, supra*, we adopted in substance principles expressed in Rule 804(b)(3) of the Federal Rules of Evidence (1985),[7] governing the admissibility of statements against interest. *Id.* at 623. A statement is admissible under rule 804(b)(3) if it meets three tests: "[1] [T]he declarant's testimony must be unavailable; [2] the statement must so far tend to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness." *United States* v. *Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). See Proposed Mass. R. Evid. 804 (b) (3).

The statement here meets the first test. The declarant's testimony was unavailable because Davis invoked his Fifth Amendment right not to incriminate himself. *Commonwealth* v. *Hesketh*, 386 Mass. 153, 158 n.4 (1982). It is questionable, however, whether Davis's alleged statement sufficiently tended to subject him to criminal liability "that a reasonable man in his position would not have made the statement unless he believed it to be true." Davis admitted to "being present at the

[7] Rule 804(b)(3) provides: "(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

scene of the homicide." We are mindful that "mere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972). Nor would Davis's admission to "doing certain acts concerning [the homicide]," without mention of even a single culpable detail subject him to criminal liability. See *United States* v. *Pena,* 527 F.2d 1356, 1361 (5th Cir.), cert. denied, 426 U.S. 949 (1976). The vague and obscure wording of the statement may have been intended to help the defendant while avoiding criminal liability for Davis.[8] See *United States* v. *Evans,* 635 F.2d 1124, 1126 (4th Cir. 1980), cert. denied, 452 U.S. 943 (1981).

We do recognize, however, that "the language of [Fed. R. Evid.] 804(b)(3) is not so narrow as to preclude all declarations but direct admission of guilt." *Commonwealth* v. *Keizer,* 377 Mass. 264, 270 (1979). At least one court has suggested that "the Rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant." *United States* v. *Thomas, supra* at 288. Nor do we overlook the consideration that "[i]t is not the fact that the declaration is against interest but the awareness of that fact by the declarant which gives the statement significance." Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule, 58 Harv. L. Rev. 1, 17 (1944). Conceivably, a reasonable layman in Davis's position, indicted for murder, might have believed that he would be inculpated by an admission that he was present. Under a generous approach to the question of penal interest, e.g., *United States* v. *Thomas, supra; United States* v. *Barrett,* 539 F.2d 244, 251, 253 (1st Cir. 1976), Davis's statement probably qualifies as a declaration against penal interest.

---

[8] We note that behind the corroboration requirement of rule 804(b)(3) lurks a suspicion that a reasonable man might sometimes admit to a crime he did not commit. A classic example is an inmate, serving time for multiple offenses, who has nothing to lose by a further conviction, but who can help out a friend by admitting to the friend's crime. See, e.g., *United States* v. *Silverstein,* 732 F.2d 1338, 1346 (7th Cir. 1984), cert. denied, 469 U.S. 1111 (1985); *United States* v. *Tovar,* 687 F.2d 1210, 1213 (8th Cir. 1982); *People* v. *Chapman,* 50 Cal. App. 3d 872, 880 (1975).

Nevertheless, Davis's statement is not admissible because there are no "corroborating circumstances [that] clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). In *Carr, supra* at 624, we stated: "In applying the corroboration requirement, judges are obliged to exercise a discriminating judgment . . . . [The judge] will consider as relevant factors the degree of disinterestedness of the witnesses giving corroborating testimony as well as the plausibility of that testimony in the light of the rest of the proof." See *Commonwealth* v. *Doherty,* 394 Mass. 341, 347 (1985). However, neither the Federal statement of the corroboration requirement nor our statement in *Carr* fully explains the respective roles of judge and jury and the evidence the judge may consider in determining whether there is "clear corroboration."[9]

The judge should assess "both the credibility of the declarant and the credibility and the probativity of his statement." Tague, Perils of the Rulemaking Process, 69 Geo. L.J. at 971 (1981). *Commonwealth* v. *Carr, supra.* In making such an assessment, the judge protects against the introduction of fabricated evidence, thus performing the same screening function that he or she exercises in considering the trustworthiness of any statement offered through an exception to the hearsay rule or, for example, in determining the voluntariness of a confession. See *Commonwealth* v. *Tavares,* 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 (1982), and cases cited.[10] The question is "not

[9] These ambiguities have been the subject of judicial and scholarly criticism. See, e.g., *Commonwealth* v. *Doherty, supra* at 354 (Liacos, J., concurring); *United States* v. *Silverstein,* 732 F.2d 1338, 1346-1347 (7th Cir. 1984); *Lowery* v. *Maryland,* 401 F. Supp. 604, 607 (D. Md. 1975), aff'd without opinion, 532 F.2d 750 (4th Cir.), cert. denied, 429 U.S. 919 (1976). Tague, Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception, 69 Geo. L.J. 851, 946-967 (1981).

[10] In determining whether the declarant's statement has been sufficiently corroborated to merit its admission in evidence, the judge should not be stringent. A requirement that the defendant corroborate the declarant's entire statement, for example, may run afoul of the defendant's due process rights under *Chambers* v. *Mississippi.* See *United States* v. *Barrett,* 539 F.2d 244, 253 (1st Cir. 1976). If the issue of sufficiency of the defendant's corroboration is close, the judge should favor admitting the statement. In most such instances, the good sense of the jury will correct any prejudicial impact.

whether the [trial] judge is satisfied that the statement is actually true as to the fact it is adduced to prove," *United States* v. *MacDonald,* 688 F.2d 224, 234 n.2 (4th Cir. 1982) (Murnaghan, J., concurring), cert. denied, 459 U.S. 1103 (1983), but whether, in light of the other evidence already adduced or to be adduced, there is some reasonable likelihood that the statement could be true. Other factors the judge may consider are: the timing of the declaration and the relationship between the declarant and the witness, *United States* v. *Hoyos,* 573 F.2d 1111, 1115 (9th Cir. 1978); *United States* v. *Thomas, supra* at 289; the reliability and character of the declarant, *United States* v. *MacDonald, supra* at 233; whether the statement was made spontaneously, *Thomas, supra* at 290; *Lowery* v. *Maryland,* 401 F. Supp. 604, 608 (D. Md. 1975); whether other people heard the out-of-court statement, *Thomas, supra;* whether there is any apparent motive for the declarant to misrepresent the matter, *United States* v. *Bagley,* 537 F.2d 162, 167 (5th Cir. 1976), cert. denied, 429 U.S. 1075 (1977); and whether and in what circumstances the statement was repeated, see *Chambers* v. *Mississippi, supra; United States* v. *Brainard,* 690 F.2d 1117, 1125 (4th Cir. 1982).

In deciding whether to admit a statement against penal interest, the judge should not base his determination on an assessment of the proffered witness's credibility. The jury, rather than the judge, should evaluate the credibility of the witness. The government can cross-examine the witness, which enables the jury to evaluate the witness's demeanor and credibility.[11] Additionally, a decision by a trial judge to exclude the testimony of a witness solely because the defendant has not established the credibility of the witness may be violative of the defendant's constitutional rights under the compulsory process

---

[11] We observe that the Federal Circuit Courts of Appeal are divided on the question whether a judge may consider the credibility of the witness as well as the credibility of the declarant. Compare *United States* v. *Bagley, supra* (trustworthiness of witness relevant) with *United States* v. *Atkins,* 558 F.2d 133, 135 (3d Cir. 1977) (trustworthiness of witness not relevant), cert. denied, 434 U.S. 1071 (1978). In this Commonwealth, we follow the line of cases which holds that the credibility of the witness is a question for the jury. See *United States* v. *Katsougrakis,* 715 F.2d 769, 776-777 (2d Cir. 1983), cert. denied, 464 U.S. 1040 (1984).

and due process clauses. *United States* v. *Satterfield,* 572 F.2d 687, 692 (9th Cir.), cert. denied, 439 U.S. 840 (1978).

In this case, even if the defendant had called the judge's attention to *Commonwealth* v. *Carr,* the judge would have been correct in excluding Davis's statement. The judge properly could have found Davis's statement not trustworthy. Only the defendant's testimony corroborated the critical portion of Davis's statement: that the defendant was not at the scene.[12] The lack of detail about the crime, and the lack of factual details as to the involvement of the declarant in the crime also detract from the credibility of the statement. Nor do the circumstances in which the alleged statement were made support its trustworthiness. The statement was made by a codefendant, while incarcerated with the defendant, several months after their indictments. The statement was neither spontaneous nor contemporaneous with the defendant's or the declarant's arrest or incarceration. Compare *United States* v. *Thomas, supra* (statement made spontaneously in front of a number of people, including United States magistrate), with *United States* v. *Zirpolo,* 704 F.2d 23, 27 (1st Cir.), cert. denied, 464 U.S. 822 (1983) (statement signed by codefendant after he had pleaded guilty) and *United States* v. *Satterfield, supra* at 693 (statement given after declarant arrested and imprisoned and in presence of defendant). See *People* v. *Chapman,* 50 Cal. App. 3d 872, 880 (1975); *Ryan* v. *State,* 95 Wis. 2d 83, 97 (Ct. App. 1980).

---

[12] Rarely will the defendant's testimony alone be considered sufficient corroboration for the hearsay statement. See *United States* v. *Tovar,* 687 F.2d 1210, 1213-1214 (8th Cir. 1982). In adopting the Federal Rules of Evidence, the United States Congress inserted the "clear corroboration" language to strengthen the simple corroboration requirement of the proposed rules which was "deemed ineffective . . . [because] the accused's own testimony might suffice while not necessarily increasing the reliability of the hearsay statement." House Comm. on Judiciary, Report on the Federal Rules of Evidence, H.R. Rep. No. 650, 93d Cong., 1st Sess. (1973), reprinted in 1974 U.S. Code Cong. & Ad. News. 7075, 7089. Although the Federal courts appear to require that, as a general rule, corroboration extend to evidence apart from the defendant's own testimony, see, e.g., *United States* v. *Rodriguez,* 706 F.2d 31, 40 (2d Cir. 1983); *United States* v. *Tovar, supra,* the judge should not ignore the defendant's testimony totally.

After the codefendant, Davis, wrote the note, he immediately destroyed it, and refused to rewrite or repeat it. Cf. *Chambers v. Mississippi, supra; United States* v. *Brainard, supra.*

We conclude that the offered statement was not "clearly corroborated" and was therefore not admissible. Neither rule 804(b)(3) nor the *Chambers* case requires judges indiscriminately to admit evidence which "because of the lack of opportunity for cross-examination and the absence of the declarant, is open to easy fabrication." *United States* v. *Barrett,* 539 F.2d 244, 253 (1st Cir. 1976).[13] Because Bertrand's testimony was inadmissible, he was not a witness necessary to the defense under Mass. R. Crim. P. 17 (b). There was no error and no risk of a miscarriage of justice in the judge's refusal to issue the writ of habeas corpus ad testificandum.

2. *Evidence of Satanic cult rituals.* The defendant contends that the judge erred in admitting over objection evidence regarding the defendant's participation in Satanic cult rituals. Several witnesses testified to the defendant's cult practices, and the defendant was asked to remove his jacket to exhibit a tattoo on his arm of a devil's head with the partially obliterated inscription "Satan's Avengers." The defendant argues that this evidence was not relevant or, in the alternative, that any probative value it may have had is substantially out weighed by its prejudicial impact on the jury. See Proposed Mass. R. Evid. 403.

The Commonwealth's evidence indicated that the defendant conducted Satanic rituals that were attended by the victim, Robin Murphy, and others. At the rituals, the defendant chanted in a "low, scratchy voice," purportedly to conjure Satan's presence. There was also evidence showing that the killing of Doreen Levesque was performed as a ritual during which the soul of the victim (Marsden) purportedly was given to Satan, and that after that killing the victim attempted to sever her

---

[13] The defendant assumes, without discussion, that violation of rule 804(b)(3) automatically is constitutional error. "[T]he federal rule is no more restrictive than the Constitution permits, and may in some situations be more inclusive." *United States* v. *Barrett, supra.* See *Commonwealth* v. *Carr, supra* at 625. Ordinarily, an error in the admission or exclusion of evidence is not of constitutional import.

relationship with the defendant and with the Satanic cult. Other evidence showed that the defendant admitted murdering the victim because she wanted to leave the cult. Finally, there was evidence that immediately following the murder of the victim, the defendant and Murphy knelt beside the body while the defendant cut an "X" on the victim's chest and spoke in the same "low, scratchy voice" that he used when he conducted the Satanic rituals. The defendant then put some of the victim's blood on Murphy's forehead and stated to her "now you are one of us."

The prosecutor was entitled to present as full a picture as possible of the events surrounding the incident itself. *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 816 (1973). The evidence here showed the "entire relationship" between the victim and the defendant. *Commonwealth* v. *Young,* 382 Mass. 448, 463 (1981). The defendant's involvement in Satanism and the victim's desire to leave the cult were "inextricably intertwined with the description of events on the night of the killing." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 373 (1978). *Commonwealth* v. *Chalifoux, supra.* Without that evidence, both the killing and the defendant's other actions at the scene "could have appeared to the jury as . . . essentially inexplicable act[s] of violence." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982). There is no error in the admission of this evidence.

3. *Evidence of other crimes.* The defendant next challenges the introduction of evidence over objection of the defendant's alleged murder of Doreen Levesque. The defendant argues that this evidence was not relevant to the crime for which he was on trial, and that it was highly prejudicial. "[T]he prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged," *Commonwealth* v. *Trapp,* 396 Mass. 202, 206 (1985), but such evidence may be admissible if "relevant for some other purpose." *Commonwealth* v. *Bradshaw, supra.*

There was evidence that the defendant murdered the victim because she was an eyewitness to the Levesque murder and in retaliation for her speaking to the police. There was also

evidence that, shortly after the Levesque murder, the victim attempted to sever her ties to the defendant, that he threatened to kill her, that she hid from the defendant, and that the defendant knew she was hiding from him and knew she was talking to the police. He said that "he want[ed] Karen back because she knew too much." The evidence was relevant to show motive and therefore admissible. *Commonwealth* v. *Weichell,* 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984). *Commonwealth* v. *Sperrazza,* 379 Mass. 166, 169 (1979). The evidence was also relevant to show the victim's state of mind, *Commonwealth* v. *Lowe,* 391 Mass. 97, 106, cert. denied, 469 U.S. 840 (1984), and to show the entire relationship between the defendant and the victim. See *Commonwealth* v. *Chalifoux, supra; Commonwealth* v. *Young, supra.* See also P.J. Liacos, Massachusetts Evidence 421-422 (5th ed. 1981 & Supp. 1985).

4. *Denial of the defendant's motion to sit at counsel table during trial.* The defendant maintains that the judge erred in denying his pretrial motion to be seated at counsel table. The defendant argues that this error was prejudicial because trial counsel was without an assistant and had not had an opportunity to interview all the witnesses, and because no curative instructions were given on the seating of the defendant.

The Commonwealth opposed the defendant's pretrial motion on the grounds that implements of escape had been found in an inmate's cell at the Bristol County house of correction and that confidential informants still within the jail had told the Commonwealth that the implements were part of a planned escape attempt involving the defendant and two other inmates. The defendant renewed his motion at the start of trial. On the basis of the Commonwealth's information, the judge concluded that the defendant was a security risk and therefore denied the motion.[14] The defendant was seated in a chair at the rear of

---

[14] At the hearing on the motion for a new trial, the judge explained that his conclusion that the defendant was a security risk was also based in part on the judge's awareness that the defendant was about to be indicted on another murder charge.

the bar railing, approximately twelve feet from defense counsel table. A uniformed court officer sat next to the defendant.

"Ordinarily, a criminal defendant should be permitted to sit at counsel table." *Commonwealth* v. *Moore,* 379 Mass. 106, 110 (1979). See *Commonwealth* v. *Lockley,* 381 Mass. 156, 164-165 (1980). A request to sit at counsel table may be denied if, on inquiry, the judge finds that some restraint is reasonably necessary to maintain order. *Commonwealth* v. *Brown,* 364 Mass. 471, 478-479 & n.16 (1973). The judge is obliged to state his reasons on the record. *Commonwealth* v. *Moore, supra* at 111.

The judge specifically found that seating the defendant at counsel table would be a risk to security and so stated on the record. The judge's reliance in part on hearsay is of little consequence because ordinary rules of admissibility do not apply to such situations. *Commonwealth* v. *Brown, supra* at 479. There is no indication that the defendant and his counsel had any difficulty conferring with each other or that separate seating diminished the effectiveness of defense counsel. *Id.* at 477. *Commonwealth* v. *Campbell,* 378 Mass. 680, 698 (1979).[15] Moreover, the judge repeatedly and forcefully instructed the jury on the presumption of innocence, that no adverse inference should be drawn from the fact that someone is arrested or indicted, and that the case should be decided on the evidence presented and not on any bias or prejudice. There is no error.

5. *Charge to the jury.* The defendant challenges the judge's charge to the jury on several grounds. The defendant did not raise these objections at the conclusion of the charge. We therefore review the challenged instructions to determine whether the charge as given created a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Anderson,* 396 Mass. 306, 315 (1985). G. L. c. 278, § 33E. In support of

---

[15] The judge did not specifically caution the jury against drawing any inferences from the defendant's separate seating. No such instruction appears to have been requested. The record does not disclose any reason for concluding that failure to give such an instruction creates a substantial risk of a miscarriage of justice.

his argument, the defendant "parses the charge and attacks it piecemeal. We, however, view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980).

a. The defendant argues that the judge's instructions to the jury on how to evaluate the credibility of witnesses trivialized the responsibility of the jurors by equating their decisions with those encountered in their daily lives. See *Commonwealth* v. *Garcia,* 379 Mass. 422, 438-442 (1980); *Commonwealth* v. *Ferreira,* 373 Mass. 116, 128-130 (1977).

The defendant's reliance on *Garcia* and *Ferreira* is misplaced. In those cases, we held that the use of specific examples of decisions from the jurors's business and personal lives to illustrate the burden of proof beyond a reasonable doubt may so trivialize the awesome duty of the jury as to be constitutional error. *Commonwealth* v. *Garcia, supra* at 439-440. *Commonwealth* v. *Ferreira, supra* at 129. The challenged portion of the charge related not to reasonable doubt but to assessment of witness credibility. See *Commonwealth* v. *Little,* 384 Mass. 262, 267 (1981); *Commonwealth* v. *Williams,* 378 Mass. 217, 232 (1979).

b. The defendant next objects to the instruction on the use of inferences, in which the judge used an example that the defendant alleges parallels the facts of the case. The example referred to stolen jewelry. The defendant argues that this example was prejudicial because jewelry found near the victim's remains was a factor in identifying the victim.

The judge's reference to stolen jewelry was made in the context of a discussion of inferences. It was preceded by another example of drawing inferences from footprints discovered after a recent snowfall. We do not believe that a reasonable juror would have confused the judge's example as an expression of belief in the Commonwealth's proof concerning the identity of the body. Compare *Commonwealth* v. *Gil,* 393 Mass. 204, 222 (1984), with *Commonwealth* v. *Sneed,* 376 Mass. 867, 873 (1978). The judge repeatedly instructed the jurors that they were the finders of fact and that they should not consider

his comments as implying a belief in the guilt or innocence of the defendant. Finally, we note that the identification of the remains as those of Karen Marsden was not a major issue at trial. We conclude that there is no error and no prejudice from the judge's coincidental reference to stolen jewelry.

c. The defendant also challenges the judge's instructions regarding the use of prior convictions to impeach. The defendant focuses on the judge's statement, "You may decide that you don't care, it doesn't bother you that somebody may have an automobile violation or something of that nature or other offenses, whatever may be charged. But that is known as impeaching credibility. Whoever presents it is saying to you: do you believe this person? They have been convicted of this, this and this. But only insofar as it affects your belief of them will you use it." The defendant argues that the reference to an automobile violation, when contrasted with the three armed robbery convictions with which the defendant was impeached "unfairly pushed the jury towards an almost automatic use of the armed robbery convictions to impeach the defendant's credibility."

This argument has no merit. The judge's full instructions on use of prior convictions for impeachment directed the jury to determine whether any prior convictions introduced for impeachment purposes involved moral turpitude, and, if so, whether that would affect the jurors' judgment of a witness's credibility. Viewed in the context of the entire charge, the instructions were sufficient to inform the jury that "they are the ultimate arbiters of credibility, and that it is for them to decide whether, and to what extent, a crime may affect credibility." *Commonwealth* v. *Bumpus,* 362 Mass. 672, 683 (1972), judgment vacated and remanded on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974). See *Commonwealth* v. *Chase,* 372 Mass. 736, 749-750 (1977). The juxtaposition of the reference to crimes involving moral turpitude with the suggestion that the jurors may not be bothered by an automobile violation only underscored the law's recognition that different crimes may "affect credibility in varying degrees." *Commonwealth* v. *Bumpus, supra.*

6. *G. L. c. 278, § 33E.* We have examined the entire case on the law and the evidence and conclude that there is no reason to order a new trial or direct the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*