COMMONWEALTH *vs.* GEORGE MICHAEL PLOUDE.

No. 96-P-1487.

Suffolk. October 20, 1997. - January 12, 1998.

Present: GREENBERG, SMITH, & FLANNERY, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Consent. *Practice, Criminal,* Conduct of prosecutor, Argument by prosecutor, Sentence.

Where the owner-lessor of a certain building retained a portion of the leased premises for his own purposes and had "free rein" of the building including the leased areas, the owner shared with the lessee the authority to give consent to a fire chief and agents of the Bureau of Alcohol, Tobacco, and Firearms to enter the building in order to conduct an investigation of a fire at the premises. [140-141]

At the trial of an indictment for burning a building with intent to defraud an insurer, in which the judge allowed the defendant's motion in limine seeking to prohibit the prosecutor from characterizing as fabricated a prior personal injury insurance claim made by the defendant, the defendant was not prejudiced by the prosecutor's misconduct in referring to the prior claim using the words "alleged" and "allegedly," where the judge sustained the defendant's objections and gave proper instructions to the jury. [141-142]

At a criminal trial, there was no error in certain of the prosecutor's closing remarks in light of the entire argument, the judge's instructions to the jury, and the evidence. [142]

Where a defendant was convicted of burning a building with intent to defraud an insurer, G. L. c. 266, § 10, as well as the lesser included offense of burning a building, G. L. c. 266, § 2, the judge erred in imposing a concurrent sentence on the duplicative offense; the cases were remanded for the vacating of one sentence and conviction and resentencing on the remaining conviction. [142-143]

INDICTMENTS found and returned in the Superior Court Department on September 28, 1993.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J., and the cases were tried before her.

*Michele R. Moretti* for the defendant.

*Joseph Makalusky,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On December 11, 1992, at 4:26 P.M. a fire broke out in a two-story building located in Chelsea. As a result of an investigation of the cause of the fire, the defendant, a tenant in the building, was charged with (1) burning of a building with the intent to defraud the insurer (G. L. c. 266, § 10) and (2) burning of a building (G. L. c. 266, § 2). Prior to trial, the defendant filed a suppression motion, which was denied by the judge after an evidentiary hearing. The defendant also filed a motion in limine requesting that the Commonwealth not introduce any evidence of an insurance claim filed by the defendant before the fire. The motion was allowed in part and denied in part. At trial the defendant was convicted of both charges.

On appeal, the defendant claims that the judge committed error in (1) denying his suppression motion, (2) allowing the Commonwealth to introduce evidence of a prior bad act regarding the defendant's insurance claim filed before the fire, and (3) improperly sentencing the defendant on both indictments. The defendant also contends that certain of the prosecutor's remarks in his closing argument amounted to reversible error.

1. *Denial of the defendant's suppression motion.* The defendant filed a motion to suppress evidence seized and observations made during inspections of the fire-damaged building by the Chelsea fire department and agents of the Bureau of Alcohol, Tobacco, and Firearms (ATF). The entries were made without any administrative or search warrants or the consent of the defendant. After an evidentiary hearing, the judge denied the defendant's motion, ruling that one of the owners of the building, Stephen Quigley, had consented to the entries and his consent was sufficient.

On appeal, the defendant argues that Quigley could not give the fire department and ATF agents his consent to enter the building because he (Quigley) did not have joint access or control of the building with the defendant.[1]

We summarize the judge's findings of fact, supplemented by the uncontroverted testimony of Quigley and Captain Russo of the Chelsea fire department, both of whose testimony the motion judge accepted as credible. *Commonwealth* v. *Alvarado,* 423 Mass. 266, 268 n.2 (1996). Quigley and his brother

---

[1]The defendant does not argue that because Quigley's status was that of only a coowner his consent was insufficient.

coowned the two-story building and leased it to one Collins. Collins subleased the building to the defendant, who was the owner of Bay State Graphics, a printing company.

The defendant had equipment on the first and second floors and a locked office on the first floor of the building. In addition to Bay State Graphics, a newspaper known as the Chelsea Record had an office for receiving ads and selling newspapers on the first floor in the front of the building. Also on the first floor was an office used to store the effects of the Quigleys' deceased father. This office was locked. Quigley had keys to the building and to his father's locked office. According to the defendant, Quigley would visit the office once or twice a week. Otherwise, the area of the first floor was open and accessible to anyone walking through the front door.

On the night of the fire, Captain Russo arrived at the scene and, after the fire was extinguished, walked through the building accompanied by the defendant. Russo allowed the defendant to remove and salvage various equipment. Russo removed an electrical box and samples of wood.[2]

Quigley did not arrive at the property until two days after the fire. By that time, the defendant had already retained the services of a company to board up the windows of the building. Water and melting snow was still entering the building, however, through holes cut into the roof by the firemen in their efforts to extinguish the fire. As a result, about one week after the fire, Quigley took steps to close the holes in the roof, hiring contractors to complete repairs (begun by the defendant), remove debris, and restore the sprinkler and heating systems.

After the fire, Quigley gave Russo permission to enter the building at any time and gave him a key for that purpose. On January 14, 1993, Russo, accompanied by ATF agents, entered the building without a warrant. Another entry was apparently made on January 15. The purpose of the entries was to conduct an investigation into the cause of the fire. As a result of their investigation, both Russo and the ATF agents concluded that the

[2]The defendant does not challenge the entry into the building by Russo on the night of the fire. "It is . . . settled that officials do not need a warrant to remain in a building for a reasonable time to investigate the cause of a fire after it has been extinguished." *Commonwealth* v. *Jung*, 420 Mass. 675, 681 (1995). Therefore, the electrical box and wood samples removed by Russo could be properly removed by him.

fire had been intentionally set.[3] After the entries, Quigley and the defendant were presented with forms giving Russo and the others permission to enter the building. Quigley signed, but the defendant refused to sign the form.

In denying the defendant's suppression motion, the judge concluded that Quigley, as coowner of the building, possessed a sufficient proprietary interest in the building to consent to the January entries into the building by Russo and the ATF agents.

In reviewing the denial of a suppression motion, we accept the judge's findings of fact absent clear error. "[T]he ultimate conclusion to be drawn from the fact[s] developed at the hearing is a matter for our review, particularly where the conclusion is of constitutional dimension." *Commonwealth* v. *Accaputo,* 380 Mass. 435, 448 n.18 (1980). We agree with the judge's conclusion that the suppression motion should be denied, but for a different reason. *Commonwealth* v. *Bennett,* 414 Mass. 269, 271 (1993).

A third party does not have the authority to consent to a warrantless entry into a building merely because he has a proprietary interest in the premises. *United States* v. *Matlock,* 415 U.S. 164, 171 n.7 (1974). See *Chapman* v. *United States,* 365 U.S. 610, 616-617 (1961) (a landlord does not generally have the authority to consent to a search of house rented to another). Nevertheless, a person who has "common authority" over the property to be searched may properly consent to a search. *United States* v. *Matlock, supra* at 171. *Commonwealth* v. *Wahlstrom,* 375 Mass. 115, 117 (1978).

The "common authority" that is required for a third party's consent to a warrantless entry into a building rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might. permit the common area to be searched." *United States* v. *Matlock,* 415 U.S. at 171 n.7. *People* v. *Breidenbach,* 875 P.2d 879, 888 (Colo. 1994) ("When third persons have broad rights to access and use of one's property, one assumes the risk that they may consent to a search of those areas"). 3 LaFave, Search and Seizure § 8.5(a), at 777 (3d ed.

---

[3]The suppression hearing was limited to whether Quigley had sufficient authority to consent to the warrantless entries. At trial, there was testimony by Russo and others that the fire started on the first floor.

1996) (a "lessor's consent may be effective . . . when it is given with respect to a portion of the premises which is not then in the exclusive possession of the lessee").

Here, Quigley had a key to the building and to his locked first floor office, which he visited once or twice a week. The building did not have a separate entrance for Quigley's first floor office. Rather, Quigley had to enter the front door and walk through space leased to the defendant in order to get to his office.[4] The defendant was aware of Quigley's practice of using his office. In addition, Quigley testified, and the judge deemed his testimony to be credible, that during the defendant's occupancy of the premises, he (Quigley) had "free rein of the building." Because Quigley retained a portion of the leased property for his own purposes and had "free rein of the building," he shared with the defendant the authority to give consent to Russo and the ATF agents to enter the building in order to conduct an investigation. It follows that the defendant's suppression motion was properly denied.

2. *Prosecutor's misconduct as to defendant's prior injury.* Before the trial, the defendant filed a motion in limine to exclude evidence of, among other things, an insurance claim filed by the defendant relating to an injury he suffered as a result of a fall in September, 1992. Defense counsel requested that the prior insurance claim not be characterized in a manner suggesting that the defendant's claim had been fabricated and that the defendant had not fallen.[5] The Commonwealth argued that the scope of the defendant's injuries suffered as a result of the fall was relevant to the defendant's work habits and decreased work hours just prior to the fire. According to the Commonwealth, after the fall, the defendant's work hours decreased because of the injuries he sustained. Thereafter, the defendant's typical day at the building began between 10 A.M. or 10:30 A.M. and would last until 1:30 P.M. or 2 P.M. On the day of the fire, the defendant arrived at about 10 and 10:15 A.M. and left at 11 A.M. stating that he was going home. However, the defendant returned to the building sometime between 1:45 P.M. and 2 P.M., an occurrence that was rare because of his injuries suffered in the fall. The

---

[4]Quigley did not have access to the defendant's locked office on the first floor, but that office was not the subject of any search.

[5]It was the Commonwealth's theory at the trial that, because the defendant's company was in a precarious financial position, he set the fire to collect the proceeds of a $475,000 insurance policy.

judge ruled that the Commonwealth's witnesses could not characterize the defendant's prior insurance claim as being fabricated but also ruled that the Commonwealth could ask questions concerning the scope of the defendant's injuries sustained in the fall.

During the course of the direct examination of the Commonwealth's witness on the topic of the scope of the defendant's injuries, and also during cross-examination of the defendant, the prosecutor used the words "alleged" and "allegedly" in regard to the fall. The defendant objected each time, and his objections were sustained by the judge.

The defendant claims that the prosecutor, by using the words "alleged" and "allegedly" in his questions, conveyed to the jury the impression that the defendant staged the accident in order to file a fraudulent insurance claim.

The use of the words "alleged" and "allegedly" in the prosecutor's questions was indeed unfortunate. The judge acted promptly in sustaining the defendant's objections, however, and, contrary to the defendant's claim, the jury did not hear any evidence concerning any prior misconduct of the defendant. Further, we note that the judge informed the jury, both at the beginning and at the close of the trial, that questions are not evidence and that only the answers are evidence. We rule that the defendant was not prejudiced by the prosecutor's misconduct.

3. *Closing argument.* The defendant claims that the prosecutor made improper comments in his closing argument. In particular, the defendant argues that the prosecutor (1) misstated evidence concerning the condition of the building's sprinkler system and (2) argued facts not in evidence concerning the location of the defendant's automobile after the fire. The defendant did not object to the remarks.

We have examined the prosecutor's remarks "in light of the entire argument, as well as the judge's instructions to the jury and the evidence at trial," see *Commonwealth* v. *Walker*, 421 Mass. 90, 104 (1995), and hold that the prosecutor did not commit error.

4. *Improper sentencing.* In *Commonwealth* v. *Shuman*, 17 Mass. App. Ct. 441, 449-452 (1984), we held that the offense of burning a building (G. L. c. 266, § 2) is a lesser-included offense of burning a building with the intent to defraud an insurer (G. L. c. 266, § 10). At the sentencing phase, both the prosecu-

tor and the defendant stated that the defendant should be sentenced on only one of the charges. The judge disagreed and imposed concurrent sentences.[6] On appeal, both the prosecutor and defense counsel agree that the judge committed error. The fact that the sentences were to run concurrently did not render the sentencing of the defendant on both guilty verdicts proper. *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981). The matter is remanded to the Superior Court where one of the defendant's convictions and sentences shall be vacated and a sentence imposed on the other conviction.

*So ordered.*

---

[6]The judge imposed a greater sentence on § 2, the lesser-included offense.