## COMMONWEALTH *vs.* SUSAN FIORE.

No. 99-P-597.

Essex. October 16, 2000. - February 15, 2002.

Present: BROWN, SMITH, & JACOBS, JJ.

*Constitutional Law,* Self-incrimination, Assistance of counsel. *Evidence,* Declaration against interest. *Error, Harmless. Practice, Criminal,* Indictment, Duplicative charges, Assistance of counsel.

At a criminal trial, the judge did not err in ruling that the defendant's husband did not, for purposes of the defendant's trial, waive his privilege under the Fifth Amendment to the United States Constitution by giving a deposition in a civil case, where the civil action and the defendant's trial were clearly separate proceedings. [788-790]

At a trial of indictments for arson, a letter written by the defendant's husband that he "may" have set one of the fires in question was admissible as a statement against his penal interest and it was error for the judge to exclude it, where the husband's testimony was unavailable as a result of his invoking his privilege against self-incrimination, and where the letter subjected him to criminal liability and was properly corroborated [790-792]; further, the error was not harmless beyond a reasonable doubt, where the excluded evidence went to the heart of the defendant's case, and the evidence against the defendant as to the fire in question was not overwhelming [792].

A defendant charged, as the result of a single course of conduct, with both arson of a dwelling, in violation of G. L. c. 266, § 1, and burning an insured property with intent to defraud an insurer, in violation of G. L. c. 266, § 10, was properly convicted under both statutes, where each crime required proof of an additional fact that the other did not. [792-793]

A defendant charged with arson was not denied the effective assistance of counsel because her trial counsel failed to secure an expert witness to testify as to the cause of the fire, where there was no evidence that expert testimony would have assisted or supported the defendant's theory of the case. [793-794]

INDICTMENTS found and returned in the Superior Court Department on November 29, 1995.

The cases were tried before *Elizabeth B. Donovan,* J.

*Lisa J. Stephani* for the defendant.

*Daniel I. Smulow,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On November 29, 1995, an Essex County grand jury returned four indictments alleging that the defendant, Susan Fiore, willfully and maliciously set two separate fires to a dwelling located in Nahant, and on both occasions willfully set the fires with intent to defraud an insurer. The fires occurred on October 5, 1994, and February 12, 1995. After a jury trial, the defendant was convicted on all four indictments.

On appeal, the defendant raises four issues. She argues that the trial judge committed error in (a) refusing to compel the defendant's husband, John Fiore (John), to testify after he asserted his privilege under the Fifth Amendment to the United States Constitution and (b) refusing to admit in evidence a letter written by John to her. The defendant also claims that she did not receive the effective assistance of counsel. Finally, she contends that the two indictments charging her with burning an insured property with intent to defraud must be dismissed as duplicative of the two indictments charging her with arson of a dwelling. Except for the last issue, the issues all relate to the fire that occurred on February 12, 1995.

1. *The October 5 fire.* Because only one issue involves the October 5 fire, we summarize briefly the evidence introduced by the Commonwealth in regard to that fire.

The defendant owned a dwelling at 116 Flash Road in Nahant. She lived in the downstairs apartment with her family. In October, 1993, Diane Tevrow (Diane) moved into the second-floor apartment at 116 Flash Road, with her husband, Barry, and their seven children.

On October 4, 1994, the defendant told the Tevrows that she was planning on having a fire because she needed money for a birthday party and for Christmas. One week earlier, the defendant had had a similar conversation with a friend, Mary Lowe. The defendant told Lowe that she was broke and needed money, and that she was thinking about having a fire in her house in order to make a claim under her insurance policy.

On the morning of October 5, 1994, the defendant called Diane into the kitchen, took a full roll of paper towels, and put it into her gas oven. When the roll of towels was engulfed in flames, the defendant tossed it into a thirty-two gallon trash barrel filled with garbage. The defendant then knocked the barrel

over. Diane yelled to her husband to wake their children and evacuate the apartment. As Barry moved to call the fire department, he heard the defendant saying, "Not yet, not yet."[1]

Shortly after 9:00 A.M., Nahant firefighter Paul Wilson arrived at the scene. He saw in the kitchen an "approximately four by four area of rubbish on the floor, burning" and a plastic rubbish bucket next to the area on fire. It took the firefighters approximately four minutes to douse the blaze. As the defendant and the Tevrows watched the firefighters extinguish the fire, the defendant exclaimed, "I did it. I ought to get about ten grand." She also told the Tevrows "that the next time [I do] it [I'm] going to do it right and [I'm] going to make it burn to the ground because [I don't] want any more headaches."

Later that afternoon, Michael Simondisky, a friend of the defendant's husband, went to the defendant's house. He saw the defendant "going over the articles that she lost in the fire," and she discussed with him adding things to the list for insurance purposes. At the time of the fire, the defendant's house was insured by Holyoke Mutual Insurance Company (Holyoke). Holyoke paid the defendant $11,087 in insurance proceeds for the October 5, 1994, fire.

2. *The February 12 fire.* As a result of nonpayment of premiums, the defendant's insurance policy with Holyoke was canceled on January 3, 1995. The defendant then applied for a policy with Massachusetts West Insurance Company (Mass. West). In the application for insurance, the defendant stated that there were no prior insurance claims on her home and that no policy of insurance had been canceled in the previous three years. Mass. West issued a $170,000 policy, effective January 6, 1995, through January 6, 1996. The total amount of the policy, including damage to other structures, was approximately $295,000. Beneficial Mortgage Company was listed as a mortgagee.

Over the course of the weeks after the October 5 fire, the defendant told Simondisky six times that "[s]he had money problems" and that she should burn the " 'f-ing' house." On or about February 5, 1995, the defendant told Mary Lowe that she

---

[1]Both Diane and Barry Tevrow were impeached by criminal convictions for conspiracy to commit wire fraud.

was broke and needed some money. She also told Lowe that the house was too much for her to afford and that she would be better off if she burned it.

At approximately 9:45 P.M. on February 12, 1995, Nahant firefighters were again called to 116 Flash Road in response to a report of a fire. As firefighter Wilson proceeded to the left side of the building, the defendant told him that the fire was in the basement. It took about fifteen minutes to extinguish the flames there. About five minutes later, the fire in that room rekindled, but the firefighters were able to extinguish it within a few minutes. By this point, however, there was heavy smoke on the first floor and the fire had spread to the rest of the house. When the fire reached the attic, the firefighters were ordered to retreat from the building. It took about four hours to extinguish the blaze, by which time the whole upper level was destroyed and the bottom part of the structure was gutted.

Fire investigators from the Massachusetts State police determined that the fire had started at the floor level of the basement. Because the fire had started at the floor level and there were signs of extreme heat, not given off by ordinary combustibles, the investigators were of the opinion that careless disposal of smoking materials was not a possible cause of the fire, and that the fire had been intentionally set and an accelerant had been used. A trained dog brought in by the State police, however, did not detect the presence of any accelerants.

As a result of the February 12 fire, Mass. West paid approximately $90,000 to the Beneficial Mortgage Company, which held a mortgage on the defendant's home. In addition, because Mass. West first assumed that arson was not involved in the February 12 fire, it paid $10,000 to the defendant for any living expenses she might incur as a result of the fire. Mass. West later refused to make any additional payments because an investigation established that the fire had been deliberately set by the defendant.

3. *The exclusion of John Fiore's testimony and the exclusion of his letter to the defendant.* The main theory of the defense as to the February 12 fire was that the defendant's husband, John, had set that fire. In support of that theory, the defendant informed the judge that John had sent her a letter, dated

December 1, 1995, from the Essex County house of correction where he was serving a sentence on an unrelated matter. In his letter, John wrote that he "may" have been the cause of the fire because he had been smoking cocaine in the basement a short time before the fire started.

As a result of the letter, the defendant issued a subpoena to John. The judge was informed by John's lawyer, however, that, if called as a witness, John planned to assert his Fifth Amendment privilege. The judge conducted a voir dire hearing in order to determine whether John would, in fact, invoke his Fifth Amendment privilege and refuse to testify. In addition, the judge heard arguments concerning whether John's letter was admissible hearsay as a statement against interest.

During the hearing, it was disclosed that John had given a deposition, under oath, in a related civil case.[2] In his deposition, John did not claim his Fifth Amendment privilege. He testified that on the evening of February 12 he was home, lying on a couch when he noticed the fire. He denied that he used drugs that night. He never stated that he "may" have set the fire.

The judge ruled that sufficient facts existed to demonstrate that John had a valid Fifth Amendment privilege and that John did not waive the privilege by giving a deposition in the civil case. The judge also ruled that John's letter was inadmissible as a statement against penal interest.

The defendant claims that the judge committed error as to both claims.

a. *John's invocation of his Fifth Amendment privilege.* The defendant argues that John waived his Fifth Amendment privilege by testifying at a civil deposition. We disagree.

"A witness who voluntarily testifies regarding an incriminating fact waives his privilege against self-incrimination 'as to subsequent questions seeking related facts.'" *Commonwealth,* v. *Martin*, 423 Mass. 496, 500 (1996), quoting from *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). "This principle has been referred to as the 'waiver by testimony' rule" and "applies only 'to the proceeding in which [the testimony] is given

---

[2]The defendant had brought a civil action against Mass. West because the insurance company refused to make additional payments under the policy. John gave deposition testimony in regard to that suit.

and does not extend to subsequent proceedings.' " *Commonwealth* v. *Martin, supra,* quoting from *Taylor* v. *Commonwealth, supra* at 191. Thus, it has been held that "grand jury proceedings leading to the indictment of a defendant, and that defendant's subsequent trial, are *separate* proceedings for the purposes of the waiver by testimony rule . . ." (emphasis original). *Commonwealth* v. *Martin, supra.*

Here, the civil action and the defendant's trial were clearly separate proceedings and, therefore, John's deposition testimony did not waive his Fifth Amendment privilege for purposes of the defendant's trial.[3]

b. *Admissibility of John's letter as a statement against penal interest.* The defendant claims the judge committed error in ruling that the statement in John's letter that he "may" have set the February 12 fire was not admissible because it did not meet the requirements of a statement against penal interest.

In *Commonwealth* v. *Drew,* 397 Mass. 65, 73-78 (1986), the Supreme Judicial Court reviewed the requirements for admissibility of statements against interest. A statement is admissible if (1) the declarant's testimony is unavailable; (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement, if offered to exculpate the accused, is corroborated by circumstances clearly indicating its trustworthiness. *Id.* at 73, citing *United States* v. *Thomas,* 571 F.2d 285, 288 (5th Cir. 1978).

Here, the first test regarding admissibility was met because John's testimony was unavailable as a result of his invoking the Fifth Amendment. *Commonwealth* v. *Hesketh,* 386 Mass. 153, 158 n.4 (1982). *Commonwealth* v. *Drew, supra.*

In regard to the second requirement, the Commonwealth argues that John's statement in the letter that he "may of [*sic*]

---

[3]The judge also ruled that John's testimony was barred because of the spousal privilege, although John did not invoke that privilege. Because of our holding in regard to the Fifth Amendment privilege, we need not address the defendant's claim that, because John did not exercise his spousal privilege and such privilege may only be exercised by the spouse-witness, the privilege was inapplicable.

been the cause of the fire" would not have subjected him to criminal prosecution because, at most, the statement demonstrated negligence, not criminal intent.

John's statement need not have been a "direct admission of guilt," *Commonwealth* v. *Drew, supra* at 74, quoting from *Commonwealth* v. *Keizer*, 377 Mass. 264, 270 (1979), because the rule encompasses "disserving statements by a declarant that would have probative value in a trial against the declarant." See *Commonwealth* v. *Drew, supra,* quoting from *United States* v. *Thomas*, 571 F.2d at 288.

Here, John's statement satisfied the second test for admissibility as a statement against penal interest because it tended to subject him to criminal liability and "any reasonable person in his position would have known as much, and for that reason would not have made the statement without believing it to be true." *Commonwealth* v. *Tague*, 434 Mass. 510, 516 (2001).

Finally, we conclude that John's statement was properly corroborated and therefore meets the third test for admissibility. "In applying 'the corroboration requirement, judges are obliged to exercise a discriminating judgment'. . . ." *Commonwealth* v. *Charles*, 428 Mass. 672, 679 (1999), quoting from *Commonwealth* v. *Carr*, 373 Mass. 617, 624 (1977). "[I]n evaluating whether a statement is adequately corroborated, a court should 'not be stringent.' " *Commonwealth* v. *Charles*, 428 Mass. at 679-680, quoting from *Commonwealth* v. *Drew*, 397 Mass. at 75 n.10. "If the issue of sufficiency of . . . corroboration is close, the judge should favor admitting the statement" and rely on "the good sense of the jury [to] correct any prejudicial impact." *Commonwealth* v. *Charles*, 428 Mass. at 680, quoting from *Commonwealth* v. *Drew, supra.* See Liacos, Massachusetts Evidence § 8.10, at 519 (7th ed. 1999).

Here, the Commonwealth's evidence disclosed that the February 12 fire started in the basement. Although the Commonwealth's expert opined that the fire was started with an accelerant, no trace of one was found. There was no evidence that placed the defendant in the basement prior to the fire. Further, Karena Fiore, the defendant's daughter, testified that she saw her father (John) coming up from the basement shortly before the fire was discovered. Thus, based on the independent

evidence introduced at trial, John's statement was sufficiently corroborated, and there was "some reasonable likelihood that [his] statement could be true." *Commonwealth* v. *Charles,* 428 Mass. at 680, quoting from *Commonwealth* v. *Drew,* 397 Mass. at 76. Therefore, John's statement was admissible as a statement against his penal interest and it was error for the judge to exclude it.

Because the defendant has a right to present evidence that another person has committed the crime, the issue is one of constitutional dimension, see *Commonwealth* v. *Jewett,* 392 Mass. 558, 562 (1984), and our review looks to whether any error was harmless beyond a reasonable doubt. *Commonwealth* v. *Tague,* 434 Mass. at 515-516. In deciding whether error is harmless, "[t]he appellate court . . . inquires whether there is a reasonable possibility that the error might have contributed to the jury's verdict." *Commonwealth* v. *Alphas,* 430 Mass. 8, 23 (1999) (Greaney, J., concurring). We consider the error only in regard to the February 12 fire.

As a result of the exclusion of John's statement the jury did not hear that another person (John) may have set the fire. Such evidence went to the heart of the defendant's case.

Further, the evidence against the defendant as to the February 12 fire was not overwhelming. There was no evidence that the defendant was in the basement prior to the fire or any evidence that she had access to an accelerant that the Commonwealth claimed was used to start the fire.

In sum, we are persuaded that the error was not harmless beyond a reasonable doubt.

4. *Whether indictments were duplicative.* The defendant argues, relying on *Commonwealth* v. *Shuman,* 17 Mass. App. Ct. 441, 449-452 (1984), and *Commonwealth* v. *Ploude,* 44 Mass. App. Ct. 137, 142-143 (1998), that the indictments charging her with burning an insured property with intent to defraud an insurer under G. L. c. 266, § 10, must be dismissed as duplicative of the indictments charging her with arson of a dwelling under G. L. c. 266, § 1. The test is whether each crime requires proof of an additional fact that the other does not. *Commonwealth* v. *Martin,* 425 Mass. 718, 721 (1997).

In *Commonwealth* v. *Shuman,* 17 Mass. App. Ct. at 450-451,

this court held that the offense of burning a building under G. L. c. 266, § 2, is a lesser included offense of burning an insured property with intent to defraud an insurer under G. L. c. 266, § 10, and, therefore, that convictions under both statutes could not stand. Accord *Commonwealth* v. *Ploude, supra.* In *Commonwealth* v. *Anolik,* 27 Mass. App. Ct. 701, 711-712 (1989), however, this court considered whether G. L. c. 266, § 1, is a lesser included offense of G. L. c. 266, § 10, and concluded that the two "are distinct offenses, and a single course of conduct will sustain convictions for both." *Id.* at 712. Here, the defendant was convicted under G. L. c. 266, §§ 1 and 10, two distinct offenses. Thus, as decided in *Commonwealth* v. *Anolik,* 27 Mass. App. Ct. at 711-712, the indictments were not duplicative and will not be dismissed.

5. *The ineffective assistance of counsel claim.* The defendant argues that she was denied the effective assistance of counsel because her trial counsel failed to secure an expert witness to testify as to the cause of the fire.

An ineffective assistance of counsel claim requires the defendant to show that counsel's performance displayed serious incompetency, inefficiency, or inattention — behavior of counsel falling measurably below that expected of an ordinary fallible lawyer — and, if found, that such behavior likely deprived the defendant of an otherwise available, substantial ground of defense. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). An attorney's tactical decisions amount to ineffective assistance of counsel only if they were manifestly unreasonable when made. *Commonwealth* v. *Martin,* 427 Mass. 816, 822 (1998). Counsel can be found to be ineffective when he or she fails to challenge a crucial aspect of the Commonwealth's case. *Id.* at 822-823.

Here, the defendant has failed to show that an expert witness would have testified to anything different from the expert testimony presented by the Commonwealth. More specifically, there is no evidence before this court that expert testimony would have assisted or supported the defendant's theory of the case, and thus the defendant has not established that the failure to present expert testimony deprived him of an otherwise available, substantial ground of defense. The defendant's counsel

was therefore not ineffective at trial by failing to present expert testimony on the cause of the February 12, 1995, fire.

The judgments on indictments 95-3490 and 95-3492 are reversed and the verdicts are set aside. The judgments on indictments 95-3489 and 95-3491 are affirmed.

*So ordered.*