# COMMONWEALTH *vs.* STEVEN J. NUTBROWN.

No. 11-P-375.

Bristol. February 14, 2012. - May 24, 2012.

Present: GRASSO, KAFKER, & MILKEY, JJ.

*Motor Vehicle,* Operation. *Practice, Criminal,* Hearsay. *Evidence,* Hearsay, Declaration against interest.

At the trial of a criminal complaint charging the defendant with, inter alia, leaving the scene of a motor vehicle accident causing bodily injury, the judge erred in preventing the defendant from offering, as statements against penal interest, two admissions by the other occupant of the motor vehicle that he, and not the defendant, had been driving at the time of the accident, where it was within the judge's discretion to find the declarant unavailable given the combined unsuccessful efforts of the defense and prosecution to locate him [776-778]; where the statements were clearly against the declarant's penal interest [778-779]; and where the relevant factors weighed predominantly in favor of the trustworthiness of the statements [779-781]; further, this court could not state beyond a reasonable doubt that the admission of the statements would not have made a difference to the jury, given the sufficient but not overwhelming evidence that the defendant was the driver, and therefore, reversal of the defendant's convictions was required [781-783].

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on March 17, 2008.

A pretrial motion to suppress evidence was heard by *Joseph I. Macy,* J., and the case was tried before *Christopher D. Welch,* J.

*Amy M. Belger* for the defendant.

*Tara L. Blackman,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. The critical contested question the jury had to decide was which of the two intoxicated men in the car, the defendant, Steven J. Nutbrown, or his friend, Christopher Bates, was driving when the car crashed into the victim and sped

away. The defendant was convicted of leaving the scene of an accident causing bodily injury, in violation of G. L. c. 90, § 24(2)(*a* ¹/₂)(1); operating under the influence of liquor, in violation of G. L. c. 90, § 24(1)(*a*)(1); leaving the scene of an accident causing property damage, in violation of G. L. c. 90, § 24(2)(*a*); and operating a motor vehicle after license suspension, in violation of G. L. c. 90, § 23.[1] The defendant's primary argument on appeal is that he was erroneously prevented from offering, as statements against penal interest, two of three admissions by Bates that he, and not the defendant, had been driving at the time of the accident. Because we conclude that the statements were admissible and their exclusion was not harmless beyond a reasonable doubt, we reverse.[2]

1. *Background.* The trial testimony was as follows: On March 15, 2008, the defendant and Christopher Bates were both drunk and driving around in a car that smashed through a guardrail and caused a bystander serious injuries. After the collision, the car had two flat tires and a cracked windshield, and the airbags had deployed. Rather than stop and help the victim, the defendant and Bates hid their faces from him, and the victim therefore could not identify the driver. A witness in a nearby house, Raymond Cote, was also unable to distinguish them. All Cote could

---

[1]The defendant was also convicted of littering, in violation of G. L. c. 270, § 16. This conviction was filed, but the record does not show the defendant's consent to the filing, so it is properly before us on appeal. See *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797 n.1 (1992). As the littering conviction is unrelated to the issue regarding who was driving, and both individuals were observed throwing beer cans into the river, this conviction is affirmed.

[2]Given our resolution of this issue, we need not reach most of the defendant's other contentions, as they are unlikely to recur at any retrial. We do note that, in the light most favorable to the Commonwealth, there was sufficient evidence to support a finding of property damage. Raymond Cote testified that he heard a loud bang, and when he looked out his window, he saw the vehicle up against the guardrail. Officer Lawless testified that the guardrail had been pulled up from its base and was out of the ground. Unlike in *Commonwealth* v. *Velasquez*, 76 Mass. App. Ct. 697, 701 (2010), where there was no evidence at all of property damage, here the jury could reasonably have inferred that the car accident caused damage to the guardrail even without evidence as to the prior state of the guardrail. See *ibid.* See also *Commonwealth* v. *Whitaker*, 460 Mass. 409, 416 (2011), quoting from *Commonwealth* v. *Lao*, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007), and S.C., 460 Mass. 12 (2011) ("the inferences a jury may draw from the evidence 'need only be reasonable and possible and need not be necessary or inescapable' ").

tell was that there were two men in the car and both car doors were open. Cote observed them drive away toward Route 195 east. They were next observed by two cousins, Tara Landerville and Danielle Medeiros, who had not witnessed the accident. Landerville and Medeiros saw the damaged car speed off Route 195, stopping in a parking lot next to a seafood store. The cousins observed the two men throw beer cans over a fence into a river and walk away, leaving the car behind. Police found and arrested them at a nearby donut shop.

Both Landerville and Medeiros identified as the driver the man with shorter hair and a green jacket, which matched the defendant's description. Medeiros testified that she saw who got out of the driver's seat. Landerville testified variously that the defendant was already out of the car by the time she saw him; that she did not see who got out of the driver's side, but saw the defendant near the driver's side while Bates was still partially seated in the passenger side; that she saw the occupants of the car as it drove by; and that she watched the car until it stopped, and saw the defendant get out of the car on the driver's side. Landerville had testified at a probable cause hearing about one year earlier that she did not see the defendant get out of the car and that the defendant was already outside the car when she saw him. A police officer testified that both cousins identified the male in the green jacket as the one who had exited the driver's side of the vehicle, although cross-examination revealed that his police report attributed the statement only to Landerville.

At the donut shop and during booking, Bates was belligerent and disruptive, while the defendant, though slow to respond and sometimes crying, was cooperative. As the booking officer spoke to the defendant, Bates told him to "shut [his] f'ing hole" and that he should say a third person had been driving the car. The defendant maintained that he had been a passenger in the car and told the officer to check the steering wheel for fingerprints and test the passenger's side airbag for blood. In reference to a small cut on his nose, the defendant stated, "[A]fter I hit what I hit, I hit the airbag." The defendant later clarified that he meant the passenger's side airbag.

Attempting to show that Bates had been driving the car, the defendant called Peter Weckesser, a former roommate of both

Bates and the defendant, who testified that he had seen Bates drive away from a liquor store with the defendant in the passenger seat shortly before the accident and near where the accident occurred. In addition, Robert Goodale, who was appointed counsel for the defendant at his initial appearance, testified that the defendant pointed Bates out to him in the hallway of the court house two days after the accident. There, Bates stated, "I was driving the car." Goodale told Bates that he was not his lawyer and anything he said was not privileged. Bates responded, "I don't care. [The defendant] wasn't driving the car. I was driving the car."

2. *Discussion.* a. *The three statements at issue.* Approximately five months before trial, the defendant filed a motion in limine seeking the admission of three sets of statements allegedly made by Bates as statements against penal interest.[3] The Commonwealth filed a motion in limine to preclude their admission. In addition to Goodale's statement discussed above, the defendant offered evidence that the day after the accident, Bates telephoned the defendant's mother, Delores Nutbrown, a "long time acquaintance," and said, "I'm sorry Mrs. Nutbrown for putting the blame on [the defendant]. I told police [the defendant] was driving when it was really me." She asked him why he had done that, and he responded, "Because I just got out of jail and was afraid they'd send me back." The defendant also offered evidence that, two days after the accident, Bates went to the apartment of his friends Paula Aiello and Daniel Dias to use the telephone,[4] and said to them, "I'm going to court to talk to [the defendant's] attorney. I'm going to man-up and tell them I was driving in the accident. I don't have time to explain now." Ultimately, the statement to Goodale was admitted and the other two were excluded. The defendant contends that the exclusion of these two statements was reversible error.

b. *The three-part test for admission of statements against penal interest.* In order for evidence to fall within the hearsay exception for statements against penal interest, "[1] the declarant's testimony must be unavailable; [2] the statement must so far tend

---

[3]The factual representations were presented in the defendant's motion in limine and repeated by his attorney at the hearing on the motion in limine. The motion judge did not hold an evidentiary hearing.

[4]He had previously rented the apartment below them.

to subject the declarant to criminal liability 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [3] the statement, if offered to exculpate the accused, must be corroborated by circumstances clearly indicating its trustworthiness." *Commonwealth* v. *Weichell*, 446 Mass. 785, 802-803 (2006), quoting from *Commonwealth* v. *Drew*, 397 Mass. 65, 73 (1986). See Mass. G. Evid. § 804(b)(3) (2011).

i. *Unavailability.* The proponent of a statement against interest bears the burden of showing that the declarant is unavailable to testify. See *Commonwealth* v. *Charles*, 428 Mass. 672, 678 (1999); *Commonwealth* v. *Lopera*, 42 Mass. App. Ct. 133, 136 (1997).[5] The motion judge found that the defendant met this burden based on his inability to locate Bates despite extensive efforts to do so.[6] The motion was, however, decided five months before trial, and a showing of unavailability must be made as of the date of trial, or at least reasonably close to it. Compare *Commonwealth* v. *Bohannon*, 385 Mass. 733, 743-746 (1982) (error for motion judge to rely on prior motion judge's determination of unavailability eight months earlier absent further, substantial efforts to locate witness), with *Commonwealth* v. *Siegfriedt*, 402 Mass. 424, 426-428 (1988) (no error to rely on prior finding of unavailability at trial when second trial took place within one week). Recognizing this requirement, the trial judge here revisited the issue of unavailability. As explained below, his analysis was complicated by the wording of the motion judge's previous ruling. We review the trial judge's ruling on unavailability for abuse of discretion. See *Commonwealth* v. *Bohannon*, *supra* at 744; *Commonwealth* v. *Siegfriedt*, *supra* at 427.

---

[5]Nor can unavailability generally be inferred based on the likelihood that the declarant would invoke his privilege against self-incrimination if located. Compare *Commonwealth* v. *Lopera*, 42 Mass. App. Ct. at 137 n.3 (refusing to uphold unavailability finding by presuming an absent witness would exercise privilege), with *Commonwealth* v. *Charles*, 428 Mass. at 679 (assuming witness would invoke privilege against self-incrimination where he was a codefendant and joint venturer, and statements directly incriminated him in same scheme).

[6]These efforts included inquiring of mutual friends of the defendant and Bates; talking to an attorney representing the defendant on a probation violation; seeking information from the Bristol County sheriff's department, Registry of Motor Vehicles, and other agencies of the Commonwealth; and hiring an investigator to search for Bates at several known prior addresses.

At trial, after the Commonwealth argued that the defendant had not demonstrated that Bates continued to be unavailable at trial five months after the motion hearing, the judge questioned both the prosecutor and defense counsel on what recent efforts had been made to locate Bates. Defense counsel stated that she had checked with friends of the defendant to see if they had any new information on his whereabouts. She had not, however, sent an investigator back out to look for Bates because she had relied on language in the motion judge's ruling that Bates would be considered unavailable unless the Commonwealth could produce evidence of his availability.[7] The trial judge considered the reliance reasonable. He also concluded that the Commonwealth had not objected to the burden shifting in the motion judge's order and was therefore bound by it. The trial judge ordered the Commonwealth to attempt to serve Bates with a summons at another address it had uncovered, but the attempt was unsuccessful. The trial judge ultimately concluded that Bates was unavailable.

Although the burden of establishing Bates's unavailability should have remained on the defendant, who was the proponent of the evidence, we conclude that it was within the trial judge's discretion to find Bates unavailable given (1) the substantial earlier efforts of defense counsel that were supplemented by at least a limited inquiry right before trial; (2) the Commonwealth's failure to object until the date of trial to the motion judge's burden-shifting order; (3) defense counsel's reliance on the motion judge's order, which the trial judge found reasonable; and (4) the Commonwealth's inability to locate Bates at the time of trial pursuant to the directive of the trial judge. The combined unsuccessful efforts of the defense and prosecution to locate Bates sufficiently established his unavailability. See Mass. G. Evid. § 804(a)(5) (2011).[8]

ii. *Against penal interest.* In order for statements to be against

---

[7]The motion judge had ruled that Bates's statement to Goodale was admissible, but that the "ruling applies only so long as Bates remains unavailable. Should the Commonwealth produce evidence that Bates is, in fact, available nothing in this ruling shall bind the trial judge with respect to a reconsideration of that issue."

[8]If Bates were a fugitive — and this is unclear from the record — that would provide an additional reason to uphold the trial judge's finding of

a declarant's penal interest, it is sufficient for them to be "disserving statements by a declarant that would have probative value in a trial against the declarant." *Commonwealth* v. *Fiore*, 53 Mass. App. Ct. 785, 791 (2002), quoting from *Commonwealth* v. *Drew*, 397 Mass. at 74. The Commonwealth properly concedes that this element is satisfied, despite the motion judge's ruling to the contrary as to some statements. In all the statements, Bates admitted to driving the car.

iii. *Trustworthiness.* In determining whether a declarant's statement is trustworthy, the Supreme Judicial Court has stated that a "judge should assess the credibility of the declarant . . . and . . . admit a statement if there is some reasonable likelihood that the statement could be true." *Commonwealth* v. *Weichell*, 446 Mass. at 803 (quotations omitted). Factors considered relevant in this analysis include "the timing of the declaration and the relationship between the declarant and the witness . . . the reliability and character of the declarant . . . whether the statement was made spontaneously . . . whether other people heard the out-of-court statement . . . whether there is any apparent motive for the declarant to misrepresent the matter . . . and whether and in what circumstances the statement was repeated." *Ibid.*, quoting from *Commonwealth* v. *Drew, supra* at 76 (ellipses in original) (citations omitted). It is the declarant's trustworthiness, not that of the witnesses, that is at issue. As the Supreme Judicial Court has stated: "The judge should not . . . assess a proffered witness's credibility and should leave that task to the jury." *Commonwealth* v. *Weichell, supra.* Finally, the court has emphasized that "the judge should not be stringent. . . . If the issue of sufficiency of the defendant's corroboration is close, the judge should favor admitting the statement. In most such instances, the good sense of the jury will correct any prejudicial impact." *Commonwealth* v. *Drew, supra* at 75 n.10. See *Commonwealth* v. *Weichell, supra* at 803-804; *Commonwealth* v. *Fiore, supra* at 791.

It appears from the record that the motion judge[9] may have impermissibly considered the credibility of the witnesses rather

unavailability. One who is on the run from justice "would likely not respond to . . . attempts to procure his appearance at the defendant's trial." *Commonwealth* v. *Charles*, 428 Mass. at 678. See *United States* v. *Sandoval-Curiel*, 50 F.3d 1389, 1392 (7th Cir. 1995).

[9]The trial judge adopted the motion judge's rulings on these points.

than that of Bates in making his ruling. He rejected Delores Nutbrown's evidence, in part, because she is "clearly an interested party."[10,11] In contrast, he found Goodale's testimony trustworthy partly because he is an officer of the court.[12] It appears that the motion judge's decision regarding admissibility, allowing in evidence the statement to Goodale and excluding the statement to the mother, may be linked to this consideration, which was for the jury, not the judge. It is difficult to discern another reason to explain why one statement would be trustworthy and the others not, given their similarity in other respects.

The motion judge also did not expressly apply many of the factors referenced in the case law. A number of those factors weigh in favor of admission. The statements were all made within two days of the crime. Compare *Commonwealth* v. *Galloway*, 404 Mass. 204, 206, 209 (1989) (statements made within two days of crime), with *Commonwealth* v. *Weichell, supra* at 804 (statements were not contemporaneous with either arrest or conviction), and *Commonwealth* v. *Marple*, 26 Mass. App. Ct. 150, 159 (1988) (statements made a year after crime not contemporaneous). Here, Bates made the statements to four different people on three separate occasions, and he had a different relationship with each of them: two were his friends, the third was a stranger who was a lawyer representing the defendant, and the fourth was the mother of the defendant. The statements were therefore not made just to a "coterie" of friends, *Commonwealth* v. *Marple, supra* at 159, and the statements were repeated, a factor favoring admission, *Commonwealth* v. *Weichell, supra* at 803. Additionally, the statements as described appear spontaneous, not elicited in response to questions. Cf. *Chambers* v. *Mississippi*, 410 U.S. 284, 300 (1973). Contrast *Commonwealth* v. *Marple, supra* at 159.

---

[10] The motion judge also relied on the fact that the statement to Delores Nutbrown was by telephone, raising "authentication and verification problems." According to the factual representation in the motion in limine, Mrs. Nutbrown was a longtime acquaintance of Bates.

[11] The motion judge did not reach the question whether the statements to Aiello and Dias were corroborated. He instead concluded that the statements to them were not against penal interest. The Commonwealth has conceded that this aspect of his ruling was error.

[12] In the motion hearing, the judge described Goodale as "trustworthy."

Bates's statements to the four individuals that he was driving were also corroborated somewhat by the testimony of Weckesser, who knew both the defendant and Bates and said that he saw Bates driving shortly before the crime. Compare *Commonwealth* v. *Galloway*, *supra* at 209 (corroboration by eyewitness, who also heard declarant confess, weighs significantly in favor of trustworthiness), with *Commonwealth* v. *Marple*, *supra* at 159 ("the evidence in the case apart from the proposed hearsay indicated strongly that the blanket exonerating assertions were false"). Bates also had a strong motive to shift the blame to another and little incentive to incriminate himself. Although Bates and the defendant were friends and former roommates, there is no evidence that they had such a close relationship that Bates would take the blame for the defendant. Compare *Commonwealth* v. *Piper*, 426 Mass. 8, 10-11 (1997) (declarant and defendant were lovers); *Commonwealth* v. *DiToro*, 51 Mass. App. Ct. 191, 199 (2001) (declarant was defendant's boyfriend). Because Bates was fearful of returning to prison, he had a very good reason not to implicate himself as the driver who committed the crimes.[13]

The main factor weighing against trustworthiness is Bates's character.[14] See *Commonwealth* v. *Weichell*, *supra* at 805. His criminal record is not in evidence (although it was offered by the defense), but he had just been released from prison. He also clearly encouraged the defendant to lie at the police station when he told him to say a third party was driving.

In sum, the relevant factors weigh predominantly in favor of the trustworthiness of Bates's statements. Mindful of the admonition to "not be stringent," *Commonwealth* v. *Drew*, 397 Mass. at 75 n.10, we conclude that the trial judge erred in excluding Bates's statements to Aiello and Dias and the defendant's mother.

c. *Harmless error.* "Because the defendant has a right to present evidence that another person has committed the crime,

---

[13] According to the defendant's factual representation, Bates had been released from prison the day before the incident.

[14] The lack of detail in Bates's statements weighs only slightly against corroboration. There is no question that Bates was in the car, and which man was driving is a simple factual issue. No further explanation was needed. Contrast *Commonwealth* v. *Drew*, 397 Mass. at 77 (statement that defendant was not at scene of murder).

the issue is one of constitutional dimension, . . . and our review looks to whether any error was harmless beyond a reasonable doubt." *Commonwealth* v. *Fiore*, 53 Mass. App. Ct. at 792. See *Commonwealth* v. *Jewett*, 392 Mass. 558, 562 (1984). As we have stated, the critical contested issue at trial was whether Bates or the defendant was driving, as no one could identify the driver at the scene of the accident, and the two intoxicated men each identified the other as the driver during police questioning.

The Commonwealth relied on one statement by the defendant and the testimony of Landerville and Medeiros to put the defendant in the driver's seat. Although ambiguous, his statement, "[A]fter I hit what I hit, I hit the airbag," could be considered by the jury as an admission that he was driving. On the other hand, the defendant otherwise steadfastly denied that he was the driver during his police interview. Both Landerville and Medeiros testified that the defendant exited the car on the driver's side when he arrived at the seafood store. Landerville, however, repeatedly contradicted herself in her testimony on this point, and Medeiros was not identified in the police report as having identified the defendant as the driver. Bates's friend Weckesser testified that he observed Bates driving the car shortly before the accident. Moreover, there was testimony that both car doors were open after the accident, raising at least a possibility that the passenger and driver may have switched places after the accident and before Landerville and Medeiros saw them. On the whole, there was sufficient but not overwhelming evidence to establish that the defendant was the driver. See *Commonwealth* v. *Fiore*, 53 Mass. App. Ct. at 792 (error not harmless where evidence against defendant was not overwhelming).

In measuring the potential effect of the excluded evidence, we must also take into account that the jury heard evidence that Bates confessed to being the driver to Goodale. What they did not hear was that Bates confessed on three separate occasions to four different people. Cf. *Commonwealth* v. *Galloway*, 404 Mass. at 209 ("The judge should have permitted the witnesses [Fuller's mother, aunt, and cousin] to testify concerning Fuller's admissions. He had no discretion to exclude them" once defendant introduced reliable testimony from another witness that corroborated their statements).

The prosecutor also capitalized on the exclusion of the other statements, strongly implying in closing that Bates implicated himself only to Goodale: "Who else did he tell? Did he tell the officers? Did he ever go to the police?" This was misleading in these circumstances. Cf. *Commonwealth* v. *Harris*, 443 Mass. 714, 732 (2005), quoting from *Commonwealth* v. *Carroll*, 439 Mass. 547, 555 (2003) ("Counsel may not, in closing, 'exploit the absence of evidence that had been excluded at his request' ").[15]

The multiple statements interlock to some degree, forming a coherent sequence explaining why Bates would have initially blamed the defendant, but then confessed. Highly intoxicated and having recently been released from jail, he initially wanted to do anything necessary to avoid returning there. However, on sober reflection, he may have realized his error, apologized to the defendant's mother,[16] and decided to "man-up" to Aiello and Dias and admit his wrongdoing to Goodale. This combination is materially different from a single, unexplained statement to Goodale.

In sum, we cannot state beyond a reasonable doubt that this additional evidence would not have made a difference to the jury. Reversal is therefore required.

3. *Conclusion.* The three requirements for admitting Bates's declarations against penal interest were satisfied. Efforts by both the prosecution and defense established Bates's unavailability.[17] The Commonwealth properly concedes that the state-

---

[15]The possible significance of the statements against penal interest was immediately recognized by the Commonwealth. At the motion in limine hearing, the prosecutor described the declarations against interest as "potentially very important statements here that could term [*sic*] the disposition of the case in front of a jury."

[16]We recognize that the motive of Delores Nutbrown to lie to protect her son would be obvious fodder for cross-examination and argument by the Commonwealth, but that issue is for the jury. See *Commonwealth* v. *Drew*, 397 Mass. at 76. See also *Commonwealth* v. *Galloway*, 404 Mass. at 209 (reversing based on exclusion of testimony by defendant's mother, sister, and aunt). If the statement to her were the only statement against penal interest, as opposed to being part of a coherent pattern of confessing to the crime, it would have less significance.

[17]On any retrial, the defendant has the burden of establishing that Bates is unavailable before Bates's statements can be admitted.

ments by Bates that he was the driver were against his penal interest. There was other corroborating evidence, and the factors to be considered in evaluating trustworthiness support admission of the statements. Finally, as we conclude that the exclusion of the statements to Delores Nutbrown, Aiello, and Dias was not harmless beyond a reasonable doubt, the convictions cannot stand.

The judgments, except for the conviction on the littering charge, are reversed, and the verdicts are set aside. The conviction for littering is affirmed.

*So ordered.*